## Wireman v. Commonwealth.

(Decided November 27, 1925.)

### Appeal from Magoffin Circuit Court.

1.  Homicide—Question of Defendant's Guilt for Jury, and Verdict on Conflicting Evidence Held Not Flagrantly Against Evidence.—In prosecution for murder, where evidence was in conflict, question of defendant's guilt or innocence was for jury, and verdict of guilty of voluntary manslaughter held not flagrantly against the evidence.

2.  Criminal Law—Testimony as to Defendant's Drinking and Possession of Liquor Before Fight Improperly Admitted.—In prosecution for murder, testimony that defendant had a drink or two before the fight and had in his possession over a pint of liquor was improperly admitted.

3.  Criminal Law—Transcript of Testimony Before Grand Jury May be Used to Contradict Witness Without Testimony of Stenographer Making it that it is a Correct One.—A transcript of testimony taken before grand jury under Acts 1922, chapter 48, section 1, may be used to contradict witness, without introducing stenographer who made it to testify that transcript is full and correct one of testimony of witness; but to introduce such transcript in evidence it must be identified as one taken before grand jury, which may be done by proving signature of stenographer who was authorized to take same, and recitation in bill of exceptions that evidence taken before grand jury was certified by official stenographer appointed for the purpose was sufficient to allow it being read to contradict the witness.

4.  Criminal Law—Failure to Admonish Jury as to Effect of Introduction of Evidence Taken Before Grand Jury Held Error.—Where objection was made to introduction of testimony taken before grand jury used solely for purpose of contradicting witness to affect his credibility, it was error for court not to admonish jury concerning effect of such evidence.

5.  Witnesses—Refusal to Permit Proof of Contradictory Statements Made by Adverse Witness to Defendant's Attorneys Held Error.—Refusal to permit defendant to prove by his attorneys that witness

for state had made contradictory statements to attorneys after homicide was error, where witness testified that there was no relation of attorney and client between him and defendant's attorneys at any time.

6. Criminal Law—Rejection of Testimony of Transaction Between Witness and Another Party Killed by Defendant Held Not Error.— In prosecution for murder, rejection of testimony of transaction occurring immediately after shooting, between witness and another party killed by defendant in same trouble, was not error, as it did not tend to elucidate any issue involved in the case.

7. Homicide—Defendant Held Entitled to Instruction on Accidental Killing in Connection with His Right of Self-Defense.—Defense theory that defendant was unable to distinguish which one of a group of men was firing at him so as to be unable to ascertain whether deceased was attacking him, and that he intended to defend himself only as against attackers, so that if deceased was not attacking defendant he was accidentally killed, entitled defendant to instruction on accidental killing in connection with his right of self-defense against those who were attacking him.

.8. Criminal Law—Argument of Prosecutor that Defense had Made Witness Drunk for Purpose of Destroying his Evidence Held Improper.—In prosecution for murder, argument of prosecutor that some one on side of defense made witness drunk, then brought him back on witness stand for purpose of destroying his evidence, was improper, where there was no evidence of such acts by defense.

9. Criminal Law—Argument that Another Jury had Convicted Defendant for Killing Another Party in Same Trouble Held Improper. —In prosecution for murder, though it may have been proper for prosecutor to argue that another party killed by defendant in same trouble could not testify because he was dead, it was improper to say that another jury had inflicted punishment of five years on defendant for killing such other party.

10. Criminal Law—Argument that Dying Declaration Not Introduced in Evidence was Delivered to Attorneys for Defendant, Inferring that they had Suppressed it, Held Improper.—In prosecution for murder, where there was a controversy in evidence concerning an unsigned dying declaration of deceased not introduced in evidence, prosecutor had a right to comment on failure of defendant to introduce witness who took down dying declaration; but it was improper to state that dying declaration was delivered to defendant's attorneys, inferring that attorneys had suppressed it, where there was no evidence to support such statement.

11. Criminal Law—Statement of Prosecutor as to Character of Pistol Used by Defendant Held Proper.—In prosecution for murder, statements of prosecutor with reference to character of pistol used by defendant was proper.

H. H. RAMEY and W. R. PRATER for appellant.

FRANK E. DAUGHERTY, Attorney General, and A. F. BYRD for appellee.

Opinion of the Court by Judge Dietzman—Reversing.

One Saturday afternoon in the middle of September, 1923, appellant, Joe Wireman, accompanied by John Bailey, a friend of his, left appellant's home in Magoffin county in appellant's Ford to visit a general store some seven miles away for the purpose of buying some supplies. On their way to this store, they met Bailey's wife, from whom he had been separated. After some parley these two made up their differences and Mrs. Bailey joined the party. On their way to the general store the Ford passed Morgan Wireman, distantly related to appellant, on his mule. The Ford seems to have scared the mule, but appellant says that he did not know this and for that reason did not stop. He admits he was laughing and talking to Bailey on this occasion, but he says that he was not laughing at Morgan Wireman or at the latter's discomfiture over the scaring of his mule, since he did not know about it. When the party reached the general store some trouble developed with the Ford and so they drove on to Salyersville, the county seat, to have some repair work done. As the garage man was unable to complete the work until very late in the evening, appellant and the Baileys stayed that night in the neighborhood with some relatives and did not leave for home again until late Sunday afternoon. The road to appellant's home led up the Licking river, which he had to cross at a place called Calvin Salyer's ford. On their way home appellant and his party met Steve Pinks, who got in the machine and rode along with them. Appellant, Katie Bailey, and her child two years old were on the front seat and John Bailey and Steve Pinks were on the back seat. The top of the Ford was down. As appellant approached the river crossing he saw in the road a crowd of men, some on horses and mules and some on foot. This crowd of men consisted of Dave Coeburn, Abe Wireman, Bill Wireman, the latter two being distantly related to appellant, Morgan Wireman and Brack Pinks, the father of Steve Pinks. The majority of this crowd were drunk or much under the influence of liquor. Brack Pinks was swapping horses with one of the other men in the crowd and was cavorting on his horse in the road and waving his hat in rather a boisterous manner. Appellant seems to have had a couple of drinks, too, but so far as the evidence shows was not drunk or materially under the influence of liquor. As he approached the crowd he sounded

his horn. The road was a narrow one. The crowd divided, Brack Pinks, Morgan and Bill Wireman going to the left of the machine and Abe Wireman and Dave Coeburn to the right. When appellant's machine passed the crowd, it probably scared Morgan's mule again. At all events as appellant's machine was going down the steep embankment to the ford in the river, which was quite low at this time, Morgan Wireman picked up some rocks in the road and heaved them at appellant's automobile. Some of these rocks struck the machine. Up to this point the testimony on both sides is practically in accord; but what next took place is in sharp dispute. The Commonwealth's testimony tends to show that as soon as Morgan Wireman threw these rocks appellant, who had removed his pistol from his pocket and laid it on the seat beside him as he passed the men, started shooting and not at Morgan Wireman or any one on his side of the road, but at Abe Wireman on the other side of the road, who was doing nothing and was unarmed. Appellant's testimony, however, shows that after he passed these men, they bunched together again in the road, and at approximately the same time that Morgan Wireman threw the rocks, Bill Wireman fired three or four shots at the automobile, one of which went through the windshield and one through appellant's hat, and that Abe Wireman fired his pistol although, as it turned out, into the ground. Appellant further testified that he did not know that Abe Wireman was in the crowd and had no malice or ill will towards him, that he was simply shooting at those who were firing at him in the endeavor to protect himself, and that as the men were bunched together it was impossible to shoot at those who were shooting at him without firing into the crowd. At all events, Abe Wireman was wounded, from which wound he died that night. After appellant had emptied his gun, he jumped from the automobile and ran into a corn field, made a wide circle and came out again on the road a quarter of a mile or so above the river crossing. He was pursued to this point by Bill Wireman and his crowd and there he killed Bill Wireman. The facts of this latter homicide are fully set out in the opinions of this court in Wireman v. Commonwealth, 203 Ky. 57, 261 S. W. 862; and on second appeal, 209 Ky. 551, 273 S. W. 68. Appellant and John Bailey were indicted for the murder of Abe Wireman. Appellant was separately tried. On such trial the jury found him guilty of voluntary manslaugh-

ter and fixed his punishment at confinement in the penitentiary for ten years and one day. From the judgment entered on that verdict he brings this appeal.

The first error relied on for a reversal in this case is that the verdict is flagrantly against the evidence. In this we cannot agree. If the Commonwealth's testimony is to be believed, Abe Wireman was standing on one side of the road the distance of its width from Morgan Wireman and his crowd; the rocks were thrown by Morgan Wireman; Abe Wireman took no part in that demonstration and was standing apart peaceably and unarmed; Joe Wireman began the shooting and instead of firing towards the crowd which was attacking him, deliberately fired his pistol at Abe Wireman, who was standing some distance away, doing nothing, peaceable and unarmed, and killed him. Of course, appellant's testimony was to the contrary; but in this state of the evidence, the case was clearly one for the jury. The trial court did not err in submitting the question of appellant's guilt or innocence to the jury.

We may group together under the second ground relied on for reversal a number of complaints made with regard to the admission and rejection of testimony. The first of these complaints is that the court permitted the Commonwealth to require the appellant on cross-examination to admit that not only had he had a drink or two just before the fracas, but that also he had in his possession over a pint of liquor. This same testimony introduced by the Commonwealth in the prosecution growing out of the killing of Bill Wireman was condemned in the case of Wireman v. Commonwealth, 209 Ky. 551, 273 S. W. 68, *supra*. It should not have been admitted here.

The next complaint grows out of these facts: Appellant introduced as a witness in his behalf Brack Pinks. His testimony on the trial was quite favorable to appellant. It seems as though his testimony given before the grand jury was at variance with that given on the trial. After laying the proper foundation to contradict Pinks, the Commonwealth's attorney, over the objection of appellant, read the testimony of Brack Pinks given before the grand jury as taken and transcribed by the stenographer appointed for that purpose in accordance with chapter 48 of the Acts of 1922. Appellant insists that under the rule announced in Fuqua v. Commonwealth, 118 Ky. 578, 81 S. W. 923; Quinlan v. Commonwealth, 149 Ky. 476, 149 S. W. 892; Moore v. Commonwealth, 143 Ky.

405, 136 S. W. 608, the court committed error in permitting this transcript to be read because the stenographer who took the testimony before the grand jury was not introduced to prove that the testimony had been correctly taken down and transcribed; that the transcript was accurate, correct and contained all the testimony of the witness upon the point about which he was interrogated. *Per contra,* the Commonwealth contends that it was authorized to read the transcript by virtue of the provisions of the aforesaid chapter 48 of the Acts of 1922. Section 1 of that act, after providing that a stenographer appointed by the Commonwealth's attorney shall on order of the Commonwealth's attorney attend any session of the grand jury for the purpose of taking full and correct notes of the testimony of the witness before such grand jury, and shall transcribe, certify and deliver the same to the Commonwealth's attorney, who shall keep such transcript for his use, says:

"And said transcript may be introduced and used in court as competent and legal evidence for the purpose of contradicting any witness whose testimony was taken upon said hearing before said grand jury."

We think the Commonwealth's position that this transcript may be used to contradict the witness without having to introduce the stenographer who made it to testify that the transcript is a full and correct one of the testimony of such witness, is well taken. But we further believe that before such transcript can be introduced in evidence it is essential it be identified as the transcript of the evidence taken before the grand jury. This may be done by proving the signature of the stenographer who took the testimony, and that he or she was the stenographer authorized to take the same, and perhaps in other ways. In this case, the bill of exceptions recites:

"The attorney for the Commonwealth now introduces the evidence given by Brack Pinks before the grand jury, at the September term of circuit court, 1923, certified by official stenographer appointed to take the evidence, to which introduction of evidence the defendant objects, which objection is overruled."

Thus it is clear that the trial judge was satisfied that the transcript offered was the transcript of the evidence

taken and transcribed by the appointed stenographer in accordance with the provisions of the act. Hence the court committed no error in permitting the Commonwealth to read from it the contradictory. testimony of Brack Pinks. However, as objection was made to the introduction of this testimony, and as the sole purpose of such introduction was to contradict Brack Pinks and thus affect his credibility, the court should have admonished the jury concerning its effect. Its failure to do so was error. Redden v. Commonwealth, 140 Ky. 98, 130 S. W. 817; Ochsner v. Commonwealth, 128 Ky. 766, 109 S. W. 326; Ball v. Commonwealth, 125 Ky. 601, 101 S. W. 956.

The court also refused to permit appellant to prove by his attorneys that John Bailey, who on the trial appeared as a witness for the Commonwealth and gave damaging testimony against appellant, had made to them just after the homicide statements differing from his testimony on the trial. No doubt the court was. influenced in this ruling by the idea he got from some questions asked John Bailey by appellant's attorneys which tended to hint that at the time Bailey made such statements to them, if he did, they had been employed as his attorneys to represent him in this trouble. As stated, this was only a hint thrown out by the form of their questions. Bailey on redirect examination by the Commonwealth's attorney emphatically stated that appellant's counsel were not and had never been his lawyers, and that when he talked with them there was no relation of attorney and client then existing between him and them. If this be true, it is not apparent why the court excluded this testimony and it should have been admitted in order to affect the credibility of John Bailey.

In so far as the witness, Katie Bailey, was not permitted to testify as to what passed between her and Bill Wireman immediately after the shooting, the court committed no error, as such transaction did not tend to elucidate any of the issues involved in this case.

The third ground relied on for reversal is that the court failed to instruct the jury on the whole law of the case. The instruction on self-defense is not complained of as such. By it, however the court predicated appellant's right to kill Abe Wireman on the ground of self-defense solely on the idea that appellant at the time he killed Abe Wireman had reasonable grounds to believe and did believe that he was in danger of death and great bodily harm at the hands of Abe Wireman, Morgan Wireman, Bill Wireman or any others acting in conjunc-

tion with Abe Wireman, and that he used such means as were necessary or apparently appeared to him to be necessary to ward off the real or apparent danger to himself at the hands of Abe Wireman, Morgan Wireman, Bill Wireman or others.acting in conjunction with them and Abe Wireman. It is the appellant's theory that after he passed these men they all bunched together again; that he was unable in the excitement to distinguish which one of this bunched group of men was firing and throwing rocks at him; that although Abe Wireman was not committing any hostile demonstration towards him, he could not ascertain this under the circumstances here present; that he intended to defend himself only as against those who were attacking him and that if Abe Wireman was not attacking him, then the shot which hit him was, so far as appellant was concerned, accidental and not intentional. On this theory, appellant insists that he was entitled to an instruction on accidental killing in connection with his right of self-defense against those who were attacking him. In this he is correct. In the case of Gillis v. Commonwealth, 202 Ky. 821, 261 S. W. 591, the court had a situation quite similar to the one before us and said that if the accused was excusable for shooting it was not material that the bullet struck a man not intended when the shot was fired.

Lastly, appellant complains of the improper argument of the prosecutor specially employed to try this case. Like complaints were made of the arguments of the same prosecutor on the two trials arising out of the killing of Bill Wireman, which complaints were sustained by this court in the two appeals from those trials hereinbefore noted. The special prosecutor is too able a lawyer not to take heed of such repeated admonitions of this court. We understand why in the stress of a trial Commonwealth's attorneys sometimes exceed the bounds of proper argument, but they should always remember that they are public officers, whose duty it is to enforce the law without taking unfair advantage of those whom it is their duty to prosecute. In his argument to the jury in this case the special prosecutor said: "Some one on the side of the defense made John Bailey drunk, and then brought him back upon the witness stand for the purpose of destroying his evidence." There is not a line of evidence in this record to sustain such a statement. We can only guess that after Bailey had testified, he was recalled for a further cross-examination, and when so recalled

appeared in a drunken condition. Who made him drunk does not appear, and such a statement coming from the special prosecutor was certainly not justified by the record. In another place, the special prosecutor said: "Bill Wireman cannot testify, he is gone to the other world, he is dead, and the defendant now faces a judgment of five years in prison for his death." Although it may have been proper to say that Bill Wireman could not testify because he was dead, it was highly improper to tell this jury that another jury had inflicted a punishment of five years on appellant for the killing of Bill Wireman in the same trouble during which Abe Wireman was killed.

There had been a controversy in the evidence about just what Abe Wireman had said in his dying declaration. It appears that this dying declaration had been taken down in writing by a man named Irvin Carpenter, but it had not been signed by Abe Wireman. Neither the paper nor Carpenter was introduced on the trial. The Commonwealth had a right to comment on the failure of the appellant to introduce Carpenter, but it went beyond this and said that the dying declaration of the deceased was delivered to one of the attorneys of the appellant by Carpenter. Of course, the inference was that the attorneys had suppressed this dying declaration. There was not a line in the evidence to support such a statement on the part of the special prosecutor, and its impropriety is obvious. The other statement he made with reference to the character of pistol appellant had and used was within the bounds of proper argument.

For the many errors hereinbefore set out the judgment of the lower court is reversed, with directions to grant the appellant a new trial in conformity with this opinion.