## Howard v. Commonwealth.

(Decided Sept. 27, 1935.)

ROSS & ROSS for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing.

Appellant indicted for killing his son Edgar Howard, was convicted, and his punishment fixed at confinement in the penitentiary for three years. Judgment having been entered in conformity to the jury's verdict, appeal is prosecuted.

The homicide occurred at the home of Andy Hurt in or near Richmond, late in the afternoon of Sunday, May 25, 1934. Appellant and his son Edgar and Edgar's two little boys had driven to Hurt's home, where during the afternoon the persons mentioned, Hurt's wife, and a man named Tudor were gathered on a sort of family visit. After the Howard party had been there some time, a slight controversy arose; slight because taking it at its utmost it was not of sufficient magnitude or importance to lead to the taking of human life, and it is entirely possible that had there been no drinking on the part of the accused and the deceased, there would have been no homicide.

The sons of Edgar, apparently tender in years, did not testify. Tudor threw little light on the matter in controversy, as he was in a position where he could not see what occurred. Mrs. Hurt became frightened and fled from the scene, so her testimony is of little value; Hurt, who claims to have both seen and heard everything, says that a controversy arose which led the son to say to his father, "Papa, you have hurt my feelings," whereupon the father said, "Son, they could be hurt worse"; that immediately the father stepped on the porch and into a room directly off the porch, and soon thereafter the son stepped on the porch, and as he approached the door leading into the room where the father had gone, a shotgun was fired, and Edgar stumbled and fell into the yard. Mrs. Hurt says they were all sitting in the yard and that Tudor, who was around the side of the house lying on a cot, made some complaint about a pup belonging to Edgar's boys, saying the pup was worrying him so that he could not sleep; that the accused grabbed the dog, and one of Edgar's boys slapped the old man and said, "You old fool, you are going to kill the dog." Whereupon he said to his son, "Why don't you make your children mind, if you don't I'm going to," and added that if Edgar did

not whip them he would. The child or children began to cry, and Mrs. Hurt says that it was then that Edgar said, "Papa, you have hurt my feelings," and he replied, "Yes, and you have hurt mine," 'and got up and went into the room, and when she heard a gun "click" she ran around to the side of the house, from which point she could not see what happened. She does not know whether Edgar got into the house or not. She says that after the shooting some one asked Edgar who shot him, and he replied, "Papa."

After the shooting, they, including the father, placed Edgar in his car to take him to the hospital; but before they started, and in a short time after the shooting, officers were called and arrived with an ambulance, in which Edgar was taken to the hospital, where he died in a short time. He was shot in the groin, and it is apparent from the record that he died from loss of blood.

The officers testified that appellant helped take Edgar out of his car and transfer him to the ambulance. They did not throw much light on the case. They did say that the boy said, as they were moving him from the car to the ambulance, "Papa, what did you do this for?" and that the old man made no reply. They said that they saw what was apparently blood spots inside the door, and that they traced them to Edgar's car. The examination, not very complete, was made by the aid of a flashlight.

The foregoing is about all the testimony for the commonwealth. Appellant was the only material witness for the defense, and he placed an entirely different light on the matter. His version of the homicide was as follows: Appellant, his son, Edgar, and the children of Edgar drove over to Hurt's home in the afternoon. Later, the little boys begged their father to take them home and he refused. The "smaller boy took up the hill and the larger boy took after him, and Edgar called to them to come back." They evidently refused, and the old man insisted that Edgar go after them, and Edgar replied that he would overtake them. At this point appellant says he told Edgar "to get in the car and take them home, and I will go in the house and lie down." He insists that nothing was said by either of them about injuries to feelings, but that Edgar went toward the car, and he went into the room and laid down

on the bed; that in about a half minute Edgar came into the room and reached behind the day bed and procured a shotgun which belonged to the old man, and which he had placed there several days before, after a hunting trip. Appellant says that he told Edgar not to take the gun, but he paid no attention, and was starting out with it and he grabbed it, and in a scuffle for possession of the gun it was fired. He states that Edgar had the gun by the muzzle and he grabbed it by the stock. He does not know whether or not his finger was on or near the trigger. The officers testified that the old man had two undischarged shells in his pocket, which fitted the gun, and appellant explains their presence by the statement that he had hunted with the gun several days before and had not removed the shells from his pocket. Appellant denies flatly that Edgar said to him after the shooting, "Papa, why did you do this?" as other witnesses had testified, but asked, "Papa, how did it happen?"

The main ground urged by appellant for reversal is that the court erred in failing to instruct on involuntary manslaughter. Another ground is that since his defense was that of accidental killing the court erred in giving a self-defense instruction, and a third relating to the court's refusal to admit certain parts of his testimony. The court gave instructions on murder, voluntary manslaughter, accidental homicide, and on self-defense.

This court seems well committed to the principle that when the defense of accidental killing is relied upon, it is the duty of the court to give the accused the benefit of an instruction on involuntary manslaughter. Pelfrey v. Com., 247 Ky. 484, 57 S. W. (2d) 474, in which case the facts differ somewhat from the facts presented here. The principle seems to have been fairly well laid down in some older cases in which the facts are more similar to the facts here. Long v. Com. (Ky.) 112 S. W. 841; Blanton v. Com., 103 S. W. 329, 31 Ky. Law Rep. 800; Maulding v. Com., 172 Ky. 370, 189 S. W. 251. And it is on the strength of these cases, rather than more recent ones cited, that we are constrained to express the opinion that accused was entitled to an instruction on involuntary manslaughter, and that failure to give it constituted error.

It does not appear to us that the giving of a self-defense instruction was prejudicial error, but since the sole defense of appellant was that of accidental killing, and no other witnesses testified to any facts which would justify an instruction on self-defense, on another trial such instruction may be omitted, provided the testimony is the same as here presented. We have frequently held that where the defense was that of accidntal killing it was not error to fail to give the self-defense instruction. Pelfrey v. Com., 247 Ky. 484, 57 S. W. (2d) 474; Maiden v. Com., 203 Ky. 446, 262 S. W. 588.

Appellant testified that when he got in the car with Edgar to take him to the hospital Edgar said, "Papa, how did it happen?" and that appellant answered, "I don't know," to which answer objection was made by the commonwealth attorney, the objection was sustained, and the answer withdrawn from the jury. Complaint is made of this ruling. The court properly ruled on this objection for two reasons: The question to which response made was leading, but a more serious objection is that the answer was a self-serving declaration and should not have been admitted. Eaton v. Com., 230 Ky. 250, 19 S. W. (2d) 218; Keith v. Com., 195 Ky. 635, 243 S. W. 293; Martin v. Com., 178 Ky. 540, 199 S. W. 603.

Because of the error above pointed out, the case must be reversed, with directions to grant the appellant a new trial.

Judgment reversed.