## HOWARD v. COMMONWEALTH.

Court of Appeals of Kentucky.
June 22, 1951.

C. A. Noble, Hazard, G. C. Allen, Jack-.ion, for appellant.

A. E. Funk, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Appellant, Galen Howard, was indicted for the murder of Jack Begley at the September Term, 1950, of the Perry circuit court. At a trial on the 8th day of November, 1950, he was convicted of voluntary manslaughter and his punishment fixed at 10 years confinement in the state reformatory. He appeals, relying upon the following grounds for reversal.

(1) That the verdict of the jury is excessive and flagrantly against the law and evidence; (2) that the court should have peremptorily instructed the jury to return a verdict for the appellant; (3) that the court erred in its instructions to the jury; and (4) that a juror was coerced into agreeing to the verdict and, therefore, said verdict was not the true verdict of the jury.

We shall consider the first two grounds together, and, in order to do so, we must review the pertinent facts developed at the trial. The deceased, Jack Begley, and his uncle, D. Y. Begley, had been together traveling in the latter's open top coupe all day prior to the homicide on the night of May 27, 1950. They had spent considerable time in Hazard, Kentucky, but both had stopped frequently at various places out in Perry county where beer was sold. D. Y. consumed several bottles of beer at each road house but he was emphatic in stating that deceased drank only two bottles of beer during the entire trip. As night drew on, D. Y. became intoxicated, but the only testimony to the effect that Jack Begley got drunk was given by Nat Kilburn, a tavern operator, who stated that deceased drank from six to eight bottles of beer in his place of business. However, Kilburn immediately contradicted himself by saying that deceased

"seemed to be sober" when he and his uncle finally left his place for their home in Leslie county.

With Jack Begley at the wheel, they started toward Hyden, Kentucky, around 9:00 p. m. The road was slippery and, after proceeding a short distance, D. Y. testified that "I told Jack, I said 'We better not try to cross the mountain, these lights ain't much good; let's go back'". Jack agreed to this suggestion and they started back toward Hazard. After traveling about a quarter of a mile, they changed their minds again when Jack said, according to D. Y.'s evidence: "'Our wives will be worried; let's turn back and try to make it; we'll drive slow and take our time; they won't know where we are at'". In the act of turning around, Jack had backed the car off the highway and the front wheels were on the hard surface and the back wheels off. In this situation, appellant, Galen Howard, and John Campbell, both deputy sheriffs of Perry county, approached them, one on each side. Howard spoke first, saying: "You are under arrest." We quote D. Y.'s testimony as to the events that followed: "And I told Jack, I said 'This fellow has got us arrested, cut your motor off' and the gas feed was stuck on the car and, of course, was making a noise, and he (Jack) said 'Wait 'till I pull this thing loose' and he reached down and Galen said 'I'll stop you' and stuck the gun over my shoulder and shot him in the back of the head, right along in the neck there." Willie Hoskins, an eye witness to the killing who was standing nearby at the time, corroborated D. Y.'s version of the homicide almost to the detail. Riley Townsend, the mortician who prepared deceased's body for burial, testified that Begley was shot behind the right ear, the bullet traveling downward and lodging in the area of the left lung. He died instantly.

Howard's testimony was to the effect that he and John Campbell were patrolling the county at the time under orders from the sheriff and had stopped at the "Blinky Moon", a road house operated by Nat Kilburn. They had been there only a few minutes when they heard a

noise outside that "went like a car wreck." Howard stated that they rushed out front to see an automobile traveling along the highway which had side-swiped a parked motor vehicle. "So we got in the car and followed the boys up the road to Crook Sharp's place." Howard stated. It was a short distance, possibly a quarter of a mile, to Sharp's place, a beer-joint called the "Fuzzy Duck". The Begley car was backed off the road a short distance below the road house when they overtook it. Howard testified: " * * * so I gets out on the right hand side, going around his (Begley's) car with a flash light in my hand, shining it on his fender. I said to Johnnie 'This is the car.'" Howard said that when he made this statement Jack Begley "let loose of the steering wheel with his right hand and in my opinion was trying to rouse the drunk man. He loosed the steering wheel with his hand and reached toward the seat and when he done that I thought he was going for his gun." Later he climbed on the running board of the car on the side on which D. Y. was lying in a "slumped position". Three or four times he ordered Begley to stop the car, he said, telling him that he was under arrest. Here we give the exact testimony of Howard: " * * * and the boy shot the gas to the car and jerked me clean off the running board, and when he done that the pistol fired and the car jerked and hit him, and when he done that Johnnie said 'Lord have mercy, Galen'! I said 'Johnnie, I couldn't help that to save my life. I didn't go to do that,' * * *."

The testimony of Campbell, the other deputy, seems almost incredible. He stated that just before the homicide he went to the other side of the Begley car and stood opposite appellant with his hand on the car door. Yet he testified he did not see appellant fire the shot, did not see the pistol and did not even know Begley had been shot until some time later. Both men left the scene of the killing without examining deceased or leaving any one in charge of the body.

◼ It is our opinion that the first two grounds urged by appellant for reversal are without merit, because we believe the evidence is amply sufficient to sustain How-

ard's conviction of voluntary manslaughter. Appellant's excuses for the commission of the crime are strikingly contradictory when, for instance, he attempts to justify the shooting as an act of self defense by testifying he thought Begley was reaching for a gun and in the same breath by stating that deceased "in my opinion was trying to rouse the drunk man". Almost immediately he veers off in a new direction by claiming that the pistol went off accidently when Begley caused the car to suddenly lurch forward. We take special note of the callous indifference of Howard and the other deputy, Campbell, toward Begley after the killing. Neither officer went near Begley to minister unto him or even determine the extent of his injury, but both men promptly departed for Hazard with D. Y. as a prisoner, leaving deceased unattended, slumped over the steering wheel of the car he had been driving.

◼ Appellant next argues that the trial court erred (a) in not giving an instruction on appellant's right to arrest deceased for being drunk in the presence of the officers and (b) in not giving a self-defense instruction in his behalf. It is our opinion that the evidence did not establish the fact that Begley was drunk when he met his death. However, assuming that he was intoxicated, the jury was nevertheless instructed that Howard had the right to arrest deceased if the car operated by Begley was being driven in his presence in a reckless manner. The right of Howard to arrest Begley was not questioned at the trial nor did the lower court fail to properly instruct the jury as to Howard's right in this respect, although it was for the offense of reckless driving rather than of drunkenness. There was evidence of reckless driving in Howard's presence, although Howard offered no proof that Begley was intoxicated at the time. However, appellant was not prejudiced by the refusal of the lower court to instruct on the offense of drunkenness; for the right he demanded, namely, the submission to the jury of his right to arrest Jack Begley, was granted to him by an appropriate instruction.

◼ We have heretofore discussed and discounted appellant's self defense plea

by showing that Howard's testimony was so contradictory that we are left in the dark as to the exact defense he relied upon as an excuse for his act at the trial. Begley was unarmed and he was attempting to loosen the accelerator in the car when he was shot, according to several witnesses, one of whom was disinterested. As we view the evidence as a whole, appellant's testimony amounts to a claim upon his part that the shooting was accidental. Under such circumstances we have held in numerous instances that a self defense instruction is not authorized. Hatfield v. Com., 248 Ky. 342, 58 S.W.2d 634; Pelfrey v. Com., 247 Ky. 484, 57 S.W. 2d 474; Hunn v. Com., 143 Ky. 143, 136 S.W. 144.

Appellant's fourth contention is so weak it scarcely merits consideration. He asserts that the verdict was not unanimous and, in support thereof, files an affidavit of one of the jurors with the record. The affiant, a woman, states in substance that she did not agree with the verdict but admits that, when asked if the verdict was hers by the circuit court at the time the jury was polled, she answered: "I reckon it is". It is well established that the testimony or affidavit of a juror will not be considered to impeach a verdict except on the ground that the verdict was made by lot. Section 272, Criminal Code of Practice; Lawson v. Com., 278 Ky. 1, 127 S.W.2d 876; Lassiter v. Com., 249 Ky. 352, 60 S.W.2d 937.

We have found no error in the record that would authorize a reversal of the judgment of the circuit court.

Wherefore, the judgment is affirmed.