THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* EDWARD LEIS, Appellant.

Fourth Department, March 30, 1961.

*John G. Putnam, Jr.,* for appellant.

*Carman F. Ball, District Attorney (Edward J. Marschner* of counsel), for respondent.

WILLIAMS, P. J.   The defendant appeals from a judgment convicting him of criminal negligence in the operation of a motor vehicle resulting in death (Penal Law, § 1053-a).

The indictment under which he was convicted contains only this one count.   In other words, to point up the main problem before us, there was no count or charge of operating a motor vehicle while in an intoxicated condition under subdivision 5 of section 70 of the Vehicle and Traffic Law.

Subdivision 5 of section 70, which pertains to the operation of a motor vehicle or motor cycle while in an intoxicated condition, as in effect at the time in question, provided:   '' Upon the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle or motor cycle while in an intoxicated condition, the court may admit evidence of the amount of alcohol in the defendant's blood taken within two hours of the time of the arrest, as shown by a medical or chemical analysis of his breath, blood, urine, or saliva.   For the purposes of this section   *   *   * (c) evidence that there was, at the time, fifteen-hundredths of one per centum, or more, by weight of alcohol in his blood, may be admitted as prima facie evidence that the defendant was in an intoxicated condition.''

A witness, who was a chemist and not a doctor of medicine, testified.   He was well experienced and undoubtedly qualified

as an expert to determine the alcoholic content present in samples of blood. He found that the blood of the defendant contained 0.19 alcohol by weight. He was asked if he was "familiar with the commonly accepted standard of alcohol in the blood?" and he replied that it was 0.15. He never saw the defendant, but based solely on the chemical analysis and on the standard which he enunciated, he gave an opinion that the defendant was intoxicated "at the time." We assume that he meant at the time of the extraction of the blood, but the record is not clear as to that. He was asked, "Does it in all cases mean a man is intoxicated when his blood condition is 0.19?" and he answered, "When backed by other evidence". He finally said that if a person's blood showed a percentage over 0.15 he was undeniably intoxicated "on a chemical basis." It is obvious that he was relying on the presumption or standard contained in subdivision 5 of section 70. His testimony was objected to, perhaps not on a precisely proper basis, but sufficiently to alert the court to the fact that the defendant objected to the use of the presumptions specified in said subdivision 5. Furthermore, at the conclusion of the People's case, a motion to strike this testimony was denied. This motion was made on the assumption that the evidence was inadmissible under said subdivision 5 because there had been no showing that the sample was taken "within two hours of the time of the arrest". Both the court and trial counsel seemed to be under the misapprehension that that subdivision controlled the admission of the evidence. But as we have said, subdivision 5 of section 70 was not in any way involved, and evidence based only on "the standard" of subdivision 5 was inadmissible and should have been rejected, even though the objection was inartistically phrased, and possibly was based on a false premise as to the law.

The Trial Judge not only permitted this evidence to stand, but charged as follows: "There was the testimony of Thomas Rejent [the chemist], who was a toxicologist. He said that he made an examination, a chemical examination, of the blood submitted to him as coming from the body of the Defendant, that he received an envelope containing a rubber stopper tube, which contained the blood; that he made an analysis to determine the content of the blood and found it 0.19 by volume. *The standard of determination is 0.15.*" (Italics ours.)

The jury was further instructed: "He [the chemist] testified as to the tests he made and told you the amount of alcohol under the V. & T. Law—he testified he found 0.19 of alcohol in this man's blood at the time—*the law only requires 0.15 to warrant any presumption that he was intoxicated. The law says*

*that 0.15 is sufficient to warrant the inference that a man is intoxicated. This was 0.19.* You don't have to take anybody's opinion, including the toxicologist." (Italics ours.)

This in effect instructed the jury that the presumption created under subdivision 5 applied to this case and to this defendant. This was error which requires a reversal.

We repeat that there was no charge against the defendant under that section or "For the purposes of [that] section". The only charge was for violation of section 1053-a of the Penal Law which is a completely different crime than that specified in subdivision 5 of section 70, and with separate and more drastic penalties. There is nothing in, or applicable to, section 1053-a concerning presumptions. That being so, there was no presumption that would apply from the mere presence of a certain amount of alcohol by weight in defendant's blood. Furthermore, the language "For the purposes of this section" cannot be construed to mean for the purposes of determining whether any other penal section has been violated.

In *People* v. *Manning* (7 A D 2d 1008) the defendant was being tried, as here, for a violation of section 1053-a of the Penal Law. There was testimony that an analysis of his blood showed .20% of alcohol by weight. An expert witness for the People testified that this percentage showed intoxication. The court said: "The court erred, however, in charging the presumption of intoxication, created by subdivision 5 of section 70 of the Vehicle and Traffic Law, from the presence of .15%, or more, by weight of alcohol in the blood. That presumption, under the statute, arises only on ' the trial of any action or proceeding arising out of acts alleged to have been committed by any person arrested for operating a motor vehicle or motor cycle while in an intoxicated condition ', and appellant was not arrested or indicted for that crime. (Cf. *People* v. *Dietz*, 5 Misc 2d 517.) "

The language employed by the court: "You don't have to take anybody's opinion, including the toxicologist ", following as it did the charge concerning the presumption, could have indicated to the jurors that they did not have to consider the chemist-toxicologist's opinion as to intoxication because the mere presence of an excess of 0.15 was sufficient.

Other errors require a reversal. The court also charged: "Without reviewing the testimony, the People claim he was driving his automobile in such a fashion that he went about 350 feet in three or four seconds and *it was resolved by the District Attorney* that a car travels in feet one and a half times its speed per second, that is, if a car is going ten miles per hour, it is

26

traveling fifteen feet per second. *The District Attorney deter-
mined by mathematical deduction that this defendant was going
at a rate in excess of the speed allowed under the circumstances
at that particular point, which was thirty-five miles an hour
and that he did it in such a manner that he disregarded the
rights of others; that he was over on the wrong side of the road;
that he was going at such a speed and in such a manner as to
show a reckless disregard for the rights of others using the high-
way,* whether or not you find at the time he was intoxicated.''
(Italics ours.)   This charge could well have given the jurors
the impression that they could accept the determinations of fact
made by the District Attorney and that these determinations
were accurate.   Also the question arises as to how far the deter-
mination of the District Attorney went because included in the
same sequence is the statement '' that he did it in such a manner
that he disregarded the right of others ''; reference is then made
to the wrong side of the road, at a speed and in such a manner
as to show a reckless disregard for others using the highway.
All this could have been construed by the jury as having been
factually determined by the District Attorney and to the effect
that the Judge himself accepted the District Attorney's mathe-
matical deduction and that the jury could do so.   This goes far
beyond a review of the District Attorney's contentions.

The court further charged:   '' We have lots of drivers in civil
actions who exceed the speed limit, but *when you get speed such
as this over thirty-five miles an hour on a highway, under con-
ditions which you might expect on the highway during the month
of February, and with the amount of alcohol found in his blood,*
you would be justified in finding there was a violation of this
section   *   *   *   You would be justified in convicting.'' (Italics
ours.)   This not only compounded the previous errors in the
charge concerning percentage of alcohol but accentuated them
and could have conveyed to the jury an impression of the Judge's
own opinion of the effect of the amount of alcohol in defendant's
blood.   Moreover, the speed of the defendant's car was a ques-
tion of fact, and the characterization of '' speed such as this over
thirty-five miles an hour '' would indicate that excessive speed
was indisputably established.   Another error in this part of the
charge is the statement, '' under conditions which you might
expect on the highway during the month of February ''.   Just
what the individual jurors might expect on the highway during
the month of February, one cannot tell.   The charge in this
respect does not relate to the conditions that could be found
from the evidence but to what the jurors might expect to find

during the month of February. Abstract charges such as these are confusing, misleading and improper. A charge should be confined to the facts and the applicable law, and should not embrace assumed facts or conditions outside of the record.

A reversal of the judgment and a new trial is required.

Present — WILLIAMS, P. J., BASTOW, GOLDMAN, McCLUSKY and HENRY, JJ.

Judgment of conviction unanimously reversed on the law and facts and a new trial granted.