Lanorma Wooster PACE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

Jan. 31, 1978.

Rehearing Denied March 14, 1978.

Jack Emory Farley, Public Defender, Larry H. Marshall, Asst. Public Defender, Frankfort, for appellant.

Robert F. Stephens, Atty. Gen., James S. Goldberg, Asst. Atty. Gen., Frankfort, for appellee.

CLAYTON, Justice.

The appellant, Lanorma Wooster Pace, was indicted for murder in the Harlan Circuit Court in connection with the March 1976 shooting death of her husband, Charles Pace. A jury of her peers found Lanorma guilty of the lesser included offense of first-degree manslaughter and sentenced her to 20 years' imprisonment, the maximum penalty for that crime. See KRS 507.030, 532.-060(2)(b).

Lanorma contends here, among other things, that the trial court erred by failing to instruct the jury on the law of self-defense. We agree, and for that reason reverse her conviction for a new trial.

The circumstances surrounding the shooting are not in dispute. On March 12, 1976, Charles Pace was pronounced dead on arrival at the Appalachian Regional Hospital in Harlan County. He had been shot in the bathroom of his home in nearby Mary Alice, Kentucky. An examination of the body revealed that death resulted from a .25–caliber bullet which entered the left upper chest and penetrated the heart.

Lanorma admitted shooting her husband. The only contention at trial was whether the shooting was intentional and without justification, as the Commonwealth argued, or whether the gun discharged accidentally during an altercation, as contended by Lanorma.

In its attempt to prove that Lanorma deliberately killed Charles, the prosecution relied primarily on the following evidence. The Commonwealth proved by Willard Pace, Charles' father, that Lanorma had threatened Charles prior to the shooting. According to Mr. Pace, upon visiting his son's house on the day before the homicide, he found Lanorma cleaning up a broken glass. When asked how the glass had broken, Lanorma stated that she had thrown it at Charles during an argument and that "If he keeps on, I'm going to kill him."

In addition, the Commonwealth proved by Kentucky State Police Detective Danny Castle and Harlan County Coroner Dr. Phillip Begley that Lanorma had changed her story about the shooting when interviewed at the hospital on the day in question. De-

tective Castle and Dr. Begley both testified that Lanorma initially told them Charles had shot himself. When Detective Castle told Lanorma he did not believe her, however, Lanorma admitted it was she who had shot her husband, but insisted the shooting was accidental. According to both Detective Castle and Dr. Begley, Lanorma's second version of the incident was that she and Charles had engaged in another argument on the morning of March 12; that upon Charles' early return from work, he lay down on the couch and told Lanorma to get him the pistol which was lying on the end table; that Lanorma grabbed the gun and ran to the bathroom, but before she could lock the door Charles pushed it open, slapped her, and tried to wrest the weapon from her; and that the gun accidentally fired when Lanorma's hand hit the wall during the ensuing struggle.

Finally, the Commonwealth proved by Detective Castle that when he visited Lanorma in the county jail on the day following the incident she told him, "I killed him, why don't they go ahead and try me. I don't give a goddamn what they do to me."

Lanorma took the stand in her own defense. She admitted threatening Charles previous to the day of the shooting, and also admitted shooting him. However, she denied that the killing was intentional, relating instead the same story about an accidental shooting she had finally told Detective Castle and Dr. Begley at the hospital. When asked to explain why she had given two different accounts of the shooting while at the hospital, Lanorma stated she had originally lied about Charles' having shot himself because she was upset and afraid her five-year old daughter might be taken from her if she told the truth.

At the close of all the evidence, the trial court instructed the jury on murder, manslaughter, and reckless homicide. Defense counsel requested that the jury be instructed on self-protection as well, and tendered an instruction setting forth the controlling law on that subject; but the trial court

refused to give the requested instruction, making instead only a fleeting reference to self-protection in its general instructions. From the general instruction on first-degree manslaughter:

### FIRST DEGREE MANSLAUGHTER; INSTRUCTION NO. II

If you do not find the defendant guilty under Instruction No. I, you will find her guilty under this instruction if, and only if, you believe beyond a reasonable doubt all of the following:

(a) That in this county on or about the 12th day of March, 1976, and before the finding of the indictment herein, she killed Charles Harrison Pace by shooting him with a pistol;

AND

(b)(i) She intended to cause Charles Harrison Pace's death;

OR

(ii) She was acting with the intention of causing serious physical injury to Charles Harrison Pace;

AND

(c) *That in so doing she was not privileged to act in self protection.*

. . . (emphasis added).

■ It is true, as the Commonwealth argues, that the defenses of accident and self-protection are inherently contradictory: an accidental shooting results from an involuntary act, while a shooting accomplished in self-defense results from a voluntary act. The mere fact that these defenses are inconsistent, however, should not preclude a jury from considering both theories under appropriate circumstances.

In *Gatliff v. Commonwealth*, 32 Ky.L. Rep. 1063, 107 S.W. 739 (1908), one Gilreath was shot and killed by the defendant, a county marshal, who had been sent to arrest him. The evidence for the prosecution reflected that the defendant killed Gilreath deliberately and without justification. According to the defendant, however, Gilreath had resisted arrest and assaulted the de-

fendant, making it necessary for him to draw his pistol and strike Gilreath with it in an attempt to beat him off. During the struggle which followed, the gun unaccountably went off and Gilreath was killed.

In considering these facts, this court stated:

. . . the court, under the evidence in this case, should have awarded an instruction as to the right of self-defense. It is true the defendant in his testimony rested his defense wholly upon the accidental discharge of the pistol; but his testimony shows, in addition, that while he did not rely upon self-defense in bar of the indictment, if what he said was true, the deceased was making a violent assault upon him at the time of the killing—that he had the marshal by the throat, and was choking him, and refused to release his grasp upon the officer's throat upon demand to do so. Now, it may have been that the defendant made a false statement as to the accidental discharge of the pistol, being moved thereto by fear of the result of the trial, and believing that his chances of acquittal were more favorable by saying that the pistol was accidentally discharged than by testifying that he killed the deceased in self-defense. The mere fact that the accused rested his defense on false or mistaken testimony did not deprive him of any defense which he might have truthfully made. It was the duty of the court to give an instruction upon every phase of the homicide which had a substantial basis in the evidence, leaving to the jury to say, if conflicting theories were presented, which was true. *Id.* 107 S.W. at 740.

Although *Gatliff* was decided some years ago, the principle for which it stands is just as sound today as it ever was. No matter what technical defense is asserted by an accused at trial, the jury is always free to disbelieve such evidence as relates to this defense and to believe instead any remaining evidence from which an exoneration of the crime might be inferred. *Cf. Glover v. Commonwealth*, 260 Ky. 48, 83 S.W.2d 881 (1935); *Wireman v. Commonwealth*, 211 Ky. 495, 277 S.W. 822 (1925).[1]

Unlike our brother Jones, we do not find *Maiden v. Commonwealth*, 203 Ky. 446, 262 S.W. 588 (1924), and similar cases cited in his dissenting opinion to be incompatible with this position. As we view the problem, the real question which must be answered in cases of this type is not whether the theory asserted by the accused at trial is logically consistent with the defense of self-protection, but is rather whether there was sufficient evidence of an attack on the accused to justify submission of an instruction on self-protection.[2] In the cited cases, a close examination of the facts reveals absolutely no evidence in any of them of a struggle or other circumstance from which a jury might have inferred that the defendant was under attack at the time of the shooting; consequently, the determination by this court in each case that an instruction on self-defense was unjustified, was entirely proper.

There was such evidence in the case at bar. Although Lanorma did testify that the pistol discharged accidentally, she also stated that it did so as she and Charles were scuffling over the gun, and that the reason she ran to the bathroom in the first place

1. In both *Glover* and *Wireman* it was held, under situations the converse of that in the instant case, that a defendant may be entitled to an affirmative instruction on accidental killing even though he testifies that he acted in self-defense. While we have since held that affirmative instructions on accidental killing are not necessary in homicide cases, *Dolan v. Commonwealth*, Ky., 468 S.W.2d 277 (1971); *Dennis v. Commonwealth*, Ky., 464 S.W.2d 253 (1971), the reasoning underlying these decisions is the same as that in *Gatliff*. *See also Pennington v. Commonwealth*, Ky., 344 S.W.2d 407 (1961) (alibi defense).

2. Whether there was sufficient evidence at trial to raise the affirmative defense of self-protection is, of course, a question of law to be decided by this court. *Cf. Jewell v. Commonwealth*, Ky., 549 S.W.2d 807 (1977).

was her fear that Charles was going to kill her and her daughter:

> Before he went to work we were in a big fight and when he came home he wanted me to go to the store and get some stuff and I wouldn't do it so he wanted me to—I was sitting on the couch and he put his head in my lap and said to give him the gun off the end table and I asked him why. He said he wanted to kill me and my little girl and I took off running so nobody wouldn't get hurt or anything.
>
> Q Where did you run to?
>
> A I run to the bathroom. I was trying to shut the door when he come in.
>
> Q Did you succeed in closing him off in the door?
>
> A No. He pushed it open before I got it shut.
>
> Q And what happened to you?
>
> A We were fighting over the gun. He was trying to take it from me. I hit my hand on the wall. Well, I was trying to throw the gun in another room to keep him from getting it hoping me and my little girl could get out the back way, and when I did, I hit the wall and that's when I turned by hand to look at it, that's when the gun went off.

This testimony, together with the testimony of Detective Castle and Dr. Begley, sufficiently injected the issue of self-defense into the case. Even though the jury did not believe that the shooting was accidental, but believed instead that Lanorma shot Charles intentionally, it might nevertheless have concluded that such action was justified had it been given the opportunity to do so.

 The insertion by the trial court of the phrase "and that in so doing she was not privileged to act in self-protection" in the general instructions was not adequate in this regard. In fact, the inclusion of this clause as a means of straddling the fence on this issue was error in and of itself. If, on the one hand, the trial court believed that Lanorma was not entitled to an instruction on self-protection, it should not have mentioned self-protection at all. By doing so, the trial court added nothing to the general instructions: a killing which is intentional and unlawful could not be in self-defense; the two qualities are mutually exclusive. If, on the other hand, the trial court was of the opinion that Lanorma was entitled to an instruction on self-protection, it should have submitted a separate instruction completely defining the law on the subject. By failing to do so, the trial court improperly left it up to the jury to determine the law. *Commonwealth v. Cook,* 86 Ky. 663, 7 S.W. 155 (1888); *see also* 1 Palmore, *Kentucky Instructions to Juries* § 1.07; for examples *see* §§ 10.01 *et seq.* (1975).

The judgment is reversed and the cause is remanded for a new trial consistent with this opinion.

PALMORE, C. J., and LUKOWSKY and STERNBERG, JJ., concur.

JONES, REED and STEPHENSON, JJ., dissent.

Separate opinions by PALMORE, C. J., concurring, and JONES and STEPHENSON, JJ., dissenting.

PALMORE, Chief Justice, concurring.

Since *Gatliff v. Commonwealth,* 32 K.L.R. 1063, 107 S.W. 739 (1908), was decided there have been a number of opinions expressing as a general principle that when the defendant in a homicide prosecution admits the killing but claims it was an accident he is not entitled to a self-defense instruction. In those that I have read, however, the evidence would not have justified such an instruction anyway. None of them overrules *Gatliff.* And all of them were decided when the defendant had the burden of proof on the issue of self-defense, whereas under the recently-enacted Penal Code the Commonwealth has it. KRS 500.070(1), 503.050. Under the law that now applies the issue is raised, and an instruction is

required, when there is evidence sufficient to create a reasonable doubt on the part of the jury. *Jewell v. Commonwealth*, Ky., 549 S.W.2d 807, 812 (1977). But aside from this technical shift in procedural balance, *Gatliff* simply makes good sense and therefore is good law today as it was in 1908. It seems to me that it would not be unreasonable for a jury to discount Mrs. Pace's testimony that the shooting was unintentional and at the same time deduce that she may very well have shot her husband out of fear.

I think that the necessity for an instruction on self-protection in this kind of case depends on what the evidence would require in the absence of the defendant's own testimony with reference to his state of mind at the time of the killing, the same as if some other witness had described the incident and the defendant had not testified at all. Under that approach, the subjective testimony of the defendant need not be given the arbitrary effect of cancelling the jury's freedom to draw its inferences from the objective evidence alone.

LUKOWSKY, J., joins in this concurring opinion.

JONES, Justice, dissenting.

At the close of all of the evidence, trial counsel for Lanorma tendered an instruction on the defense of self-protection. The trial court in my view properly refused to submit that instruction to the jury.

During direct examination Lanorma testified that she "was trying to throw the gun in another room to keep him from getting it . . . and when I did I hit the wall and that's . . . when the gun went off." She emphatically denied she intended to shoot her husband.

It is apparent from Lanorma's testimony that her justification for the killing of her husband was not that she acted in self-protection, but that the killing was accidental. Her testimony clearly indicates the shooting was accidental; not in self-protection.

Since time immemorial, this court has repeatedly held where, in a case of homicide, the only defense interposed is that the killing was accidental, and the accused himself so testifies, an instruction on the law of self-defense should not be given. See *Maiden v. Commonwealth*, 203 Ky. 446, 262 S.W. 588 (1924); *Pelfry v. Commonwealth*, 247 Ky. 484, 57 S.W.2d 474 (1933); *Howard v. Commonwealth*, 260 Ky. 467, 86 S.W.2d 126 (1935); *Howard v. Commonwealth*, Ky., 240 S.W.2d 616 (1951); and *Blaine v. Commonwealth*, Ky., 459 S.W.2d 759 (1970).

The majority opinion is bottomed on a case decided by this court in 1908. *Gatliff v. Commonwealth*, Ky., 107 S.W. 739 (1908). In that case the deceased was making a violent assault upon the prosecuting witness. He had the officer by the throat and was choking him. That case is as different from the case at bar as night is from day, and in my view, is not applicable here. I am of the opinion that the trial court properly instructed the jury, who heard all the evidence and rendered its verdict based upon the law and the facts. I am unwilling to substitute my judgment for that of a properly instructed jury.

Therefore I dissent.

STEPHENSON, Justice, dissenting.

I respectfully dissent from the majority opinion. It is my firm conviction that the majority opinion will impose an intolerable burden upon the trial bench in attempting to determine if the circumstances of cases such as this warrant a self-defense instruction. The practical solution to this problem will undoubtedly result in the various trial courts' giving a self-defense instruction if requested in every case where death resulted during the course of a struggle or altercation. Absurdities will result as I will suggest later in this dissent.

This dissent is primarily confined to a situation, such as that presented here, where the defense is accident and there are no third-party witnesses.

A considerable body of law has built up in this jurisdiction on the problem of giving a self-defense instruction where defendant claims accidental killing. I have this feeling, reading *Gatliff* and the other cases, that somewhere along the way this court has equated self-defense with manslaughter in adhering to the principle of giving the whole law of the case; for instance, the majority opinion states, "no evidence . . . of a struggle, or other circumstances from which a jury could infer defendant was under attack." In all of this, it is my opinion that the court has glossed over what I consider to be the essential element, that is the subjective test of self-defense: fear of serious bodily harm or death. Particularly as here in an unwitnessed killing, I do not believe there is a rational basis for a jury to infer self-defense where the defendant herself testified that the killing was accidental and did not testify that she intentionally killed the deceased in fear of serious bodily harm or death at his hands. Accident is involuntary; self-defense is intentional. It is recognized by all that these defenses are contradictory.

Prior to the adoption of the Penal Code, the defendant had the burden of proof on a plea of self-defense. It is true that the Penal Code now places on the Commonwealth the burden of proof once the issue is raised; however, according to the commentary to KRS 500.070, the defendant has "the responsibility of raising the issue" of self-defense. That the Commonwealth now has the burden of proof once the issue is raised as opposed to the prior rule that the defendant had the burden of proof is a principle interesting to lawyers, judges, and legal scholars; but in my view, it is a distinction without a real difference. From my observation of juries, it is unlikely that jurors will recognize this fine distinction and will exercise their judgment without regard to the subtle change in legal principles.

I cannot see where this appellant has fulfilled her responsibility of raising the issue of self-defense. There were no third-party witnesses. Her defense was accident. The struggle testified to justified a manslaughter instruction, nothing else! The only other story she told prior to trial was that her husband shot himself. In my view, it would be clearly unreasonable for a jury to draw an inference that she killed in self-defense.

In *State v. Peal*, Mo., 463 S.W.2d 840 (1971), Missouri takes the position that both accident and self-defense cannot be submitted to the jury on the defendant's testimony alone:

> "However, by the established law of this state, a defendant alone can not provide the basis for such inconsistent defenses. Either instruction relates to an explanation of the homicide, but they are totally inconsistent. If the shot was fired in self-defense, it required the voluntary act of defendant; conversely, if the shot was accidental it was involuntary. This is not to say, however, that both defenses may not be submitted to a jury under certain circumstances. For example, if a defendant by his own testimony provides the basis for an accident instruction, it must be given; but if to the contrary, testimony of others shows defendant acted in self-defense, he also is entitled to a self-defense instruction. . . . In the instant case, defendant relies upon his own testimony as a basis for the inconsistent defenses. This cannot be permitted. His positive testimony that the shooting was accidental and unintentional would clearly negative any possible inference of self-defense based upon other facts appearing in his testimony."

See also *State v. Brown*, Mo., 502 S.W.2d 295 (1973), to the same effect.

It appears California does not instruct on inconsistent defenses. In *People v. Sedeno*, 10 Cal.3d 703, 112 Cal.Rptr. 1, 518 P.2d 913 (1974), Sedeno was convicted of the murder of a police officer. He testified that two police officers were kicking and beating him and his pistol fired accidentally. He

specifically denied self-defense. The California court said:

"Unlike the rule obliging the court to instruct on lesser included offenses and to give requested instructions whenever there is 'any evidence deserving of any consideration whatsoever' (*People v. Carmen* (1951), 36 Cal.2d 768, 773, 228 P.2d 281, 284), the duty to give instructions, *sua sponte*, on particular defenses and their relevance to the charged offense arises only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case. Indeed, this limitation on the duty of the trial court is necessary not only because it would be unduly burdensome to require more of trial judges, but also because of the potential prejudice to defendants if instructions were given on defenses inconsistent with the theory relied upon. 'Appellate insistence upon *sua sponte* instructions which are inconsistent with defense trial theory or are not clearly demanded by the evidence would hamper defense attorneys and put trial judges under pressure to glean legal theories and winnow the evidence for remotely tenable and sophistical instructions.'"

The opinion went on to say:

"There was no evidence, however, that defendant believed his life was endangered and he expressly denied any resistance to the assault and any intent to shoot Officer Klass. He testified that the assault had ended at the time of the shooting, that he shot into the air in order to startle the officers, and he twice specifically disclaimed firing the gun as a means of self-defense.

"It is not error to refuse a request for instructions on self-defense when there is no evidence from which it can be inferred that the defendant feared great bodily harm or death at the hands of the victim, or when the defendant has denied acting in self-defense and claimed the death was accidental."

It is interesting to note the concern of the California court as to the potential prejudice to defendants. This is an area worth exploring and is not addressed in the Kentucky cases.

In this regard, we find that submitting inconsistent defenses is considered prejudicial in the state of New York.

*People v. Wright*, 17 A.D.2d 151, 232 N.Y. S.2d 767 (1962), states:

"The defendant's defense was predicated solely upon the position taken by him that the stabbing had occurred accidentally when the deceased—a rather large woman—pushed him and fell to the floor with him while he had a knife in his hand. That being his defense it was the only one that should have been submitted to the jury for its consideration. However, the charge of the Court instructed the jury as to the elements of the defense of justifiable homicide as well as those of the defense of excusable homicide. Counsel for the defendant excepted to such charge and now urges it as a ground for reversal.

"By such instruction the Court erroneously gave the jurors an issue to consider which was not in the case (cf. *People v. Leis*, 13 A.D.2d 22, 27, 213 N.Y.S.2d 138, 143). The defenses of justifiable homicide and excusable homicide are mutually exclusive, the former contemplating an intentional act leading to death while the latter negatives such intention. If the jury gave any consideration to the charge of the Court with respect to justifiable homicide it must have found no merit to such defense because of the complete absence of any proof to support it. Such a finding by the jury could very well have had an effect prejudicial to the defendant in its consideration of the defense of excusable homicide."

It occurs to me that the Commonwealth could extricate itself from the dilemma

posed by the majority opinion by asking the defendant, as in the California case, specifically if the killing was in self-defense. The answer is obvious, the defendant is committed to the theory of accident and is compelled to unequivocally deny self-defense. This would indeed create a peculiar situation if the trial court instructed on self-defense. The possibility of prejudice to the defendant should be considered. I can imagine several arguments that would place the defense in an absurd position before the jury. Essentially the same problem is created in the present case, the defense of accidental killing in itself denies self-defense. This illustrates the importance of the subjective test that the defendant *believed* he was in danger of death or serious bodily harm. Our cases have not addressed this problem, and it is my view that this proposition of giving instructions inconsistent with defendant's theory of the case where a subjective test is so important should be re-examined. I wonder how the *Gatliff* court would have viewed the case had Gatliff unequivocally denied self-defense. At the very best, in the unwitnessed killing an instruction inconsistent with the defendant's theory of the case should not be given.

REED, J., joins in this dissent.