## Lucas v. Commonwealth.

(Decided February 22, 1911.)

### Appeal from Nelson Circuit Court.

1.  Second Conviction—Form of Verdict.—In order to double the punishment for a second conviction of felony under section 1130 of the Kentucky Statutes, it is not necessary that the verdict of the jury should show there had been a former conviction.

2. Same—Evidence—Copies of Court Records.—A former conviction of felony in this state may be shown by certified copies of the verdict, judgment of conviction and sentence of the former trial.

E. E. McKAY for appellant.

JAS. BREATHITT, Attorney General, and TOM B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

The appellant David (alias J. D.) Lucas was indicted, tried and convicted of the crime of wilfully and maliciously cutting and stabbing Hiram Kendall, with the intention of killing him. Coupled with that charge the indictment also charged Lucas with having been theretofore convicted in the Lee Circuit Court of the crime of murder and sentenced to a seven year term in the penitentiary. This last paragraph of the indictment as to the former conviction was added for the purpose of doubling appellant's punishment in case he should be found guilty of the first charge contained in the indictment.

Kendall and Lucas resided upon farms in the same neighborhood in Nelson county. On the day of the cutting Kendall, as he was going to Bardstown, about five and a half miles distant from his farm, met Lucas in front of a store on the roadside. Lucas rode with Kendall in his buggy up the road to Lucas' place, where they separated, Kendall going on to town. Kendall left Bardstown about noon on his return journey; and, as he passed Lucas' farm, Lucas was at the gate waiting for him. Kendall had bought a quart of whiskey in town, and, Lucas having gotten into the buggy with Kendall, the two men proceeded down the road towards Kendall's home. Kendall had begun drinking while in Bardstown, and both men kept it up. They passed Kendall's house a few miles further down the road and went to Boone's home for the purpose, as Kendall said, of buying a hog from Boone. They did not find Boone at home, and returned to Kendall's home. Kendall's gate opened on the road in front of his house, which set back some distance from the road. It was here that the difficulty occurred; and, there is considerable conflict between the two men as to what happened. Lucas says that Kendall had become very drunk by that time, and that he himself was drunk; that Kendall refused to let Lucas get

out of the buggy, and that finally Lucas made an effort to get out by force; whereupon both of them fell over the wheel on to the road. Lucas says Kendall caught him by the throat and was choking him when he (Lucas) drew his knife and began to cut Kendall. On the other hand, Kendall says that when they arrived at the front gate and he started to get out of the buggy, Lucas insisted on keeping the buggy and taking it home with him, and upon Kendall's remonstrance and objection, Lucas hit him over the head with the butt end of the buggy whip, and finally knocked him down. However the difficulty may have started, it is clear that Kendall was knocked down in the road near the buggy, and that Lucas stabbed him several times while there. About that time Kendall's mother and twelve-year-old daughter came running from the house and called to a man working in an adjoining field to come to their assistance, saying that Lucas was killing Hiram. Kendall's mother and daughter succeeded in getting Kendall inside the front gate; whereupon Lucas returned to the buggy, took something out of it and then followed Kendall, his mother and daughter inside the inclosure and beyond the gate, and again repeatedly stabbed him. He did not desist until the child caught the knife in her hand, and had been severely cut. Lucas then returned to the buggy, got into it and started up the road; but upon the arrival of a man from the adjoining field, he abandoned the buggy and ran up the road towards his home. Kendall was confined to his bed for some four or five weeks, and finally recovered.

The court instructed the jury upon the law as to wilful and malicious cutting, the former conviction, and cutting in sudden heat and passion. The court also gave the usual instruction as to a reasonable doubt, and a separate instruction which directed the jury to fix appellant's punishment at confinement in the penitentiary for a period of time double the term of imprisonment adjudged against him on the former conviction, if they should find him guilty of the malicious cutting charged in the indictment.

There is no serious complaint against the instructions; it is practically conceded that they covered every phase of the law of the case that was presented by the evidence. It is insisted, however, that the verdict as rendered is not sufficient to warrant the double penalty

provided by the statute in cases of this character. Section 1130 of the Kentucky Statutes reads as follows:

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life. Judgment in such cases shall not be given for the increased penalty, unless the jury shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this State."

In this case the jury's verdict is as follows:

"We, the jury, find the defendant David Lucas, alias J. D. Lucas, guilty as charged in the indictment, and place his punishment at fourteen (14) years in the State Penitentiary."

It is urged that this verdict does not find the appellant guilty of the charge of former conviction in the Lee Circuit Court as stated in the indictment; and that so much of the verdict as finds appellant guilty as charged in the indictment may have referred to the cutting in sudden heat and passion, which is a mere dismeanor and which, under the instructions, could have been the verdict in this case. In other words, it is insisted that the statute is not satisfied unless the verdict should show the fact of former conviction of felony committed by the prisoner. This question, however, is no longer an open one in this State. Oliver v. Commonwealth, 113 Ky., 230, was a trial under an indictment for the crime of malicious cutting and wounding with intent to kill, coupled with the charge of a former conviction for malicious shooting; and in that case the verdict read as follows: "We, the jury, find the defendant guilty as charged in the indictment, and fix his punishment at ten (10) years in the penitentiary." This court affirmed the judgment entered upon that verdict, although it did not show, in terms, that the jury found there had been a former conviction. The same question was decided in Herndon v. Commonwealth, 105 Ky., 197. In considering the statute in that case the court said that its purpose was to guarantee to the defendant a trial by jury on the question of former conviction, and that it was not necessary for the jury to incorporate in its verdict a finding of former conviction; it was sufficient if the verdict fixed a punishment under an instruction which pro-

perly presented that question. The instructions given in this case followed the instructions given in the two cases above referred to.

It is further contended that the court erred in admitting in evidence certified copies of the record of the Lee Circuit Court showing the former conviction of Lucas in that court for murder. The Commonwealth introduced the deputy clerk of the Lee Circuit Court who read to the jury certified copies of the verdict, judgment of conviction, and the sentence in the former case. The clerk also testified that Lucas, the defendant in this case, was the same man who was defendant in the former case in Lee County, and that he had known him from childhood. Besides, Lucas, himself, admitted he was the same man. Moreover, section 1627 of the Kentucky Statutes, provides that a copy of any record or paper properly filed or lodged in the clerk's office of any court, shall, upon proof of the execution of the original, be admitted as evidence in lieu thereof. Smith v. Gowdy. 29 Ky. L. R., 832; Greenleaf's Evidence, (Lewis Ed.) section 507. The evidence above mentioned fully satisfied the requirements of the statute, and justified fixing the punishment at confinement not less than double the time imposed on the first conviction. Gragg v. Commonwealth, 31 Ky. Law Rep., 873; Tall v. Commonwealth, 33 Ky. Law Rep., 541.

Being clearly of the opinion that the verdict and judgment were fully authorized by the law and the evidence, the judgment of the lower court is affirmed.