## Maiden v. Commonwealth

(Decided May 27, 1924.)

### Appeal from Whitley Circuit Court.

1. Homicide—Evidence Held Sufficient to Support Conviction for Voluntary Manslaughter.—Evidence held to sustain conviction for voluntary manslaughter.

2. Homicide—No Complaint for Conviction for Lower Instead of Higher Degree.—One convicted of voluntary manslaughter may not complain that evidence more strongly tended to prove murder, there being evidence that defendant's anger was provoked by deceased.

3. Homicide—Instruction on Self-Defense Improper where Only Defense Accidental Killing.—Where only defense interposed is that killing was accidental, and accused himself so testifies, instruction on self-defense should not be given.

4. Homicide—Instructions to be Given where Defense is Accidental Killing.—Where defense is accidental killing, it is only necessary that jury be instructed upon law of murder, voluntary manslaughter, involuntary manslaughter, accidental killing, reasonable doubt, and presumption of innocence.

5. Homicide—Failure of Verdict to Declare in Words Degree of Manslaughter Immaterial.—Failure to declare in words defendant guilty of voluntary manslaughter did not render verdict indefinite so as to make it invalid, if from language as a whole no doubt could rise as to offense for which defendant was found guilty.

STEPHENS & STEELY for appellant.

FRANK E. DAUGHERTY, Attorney General, and GARDNER K. BYERS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, George Maiden, following his indictment by the grand jury of Whitley county for the murder of Virgil Reynolds, was on his trial in the Whitley circuit court for the crime charged, by verdict of a jury found guilty of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a period of ten years. He was refused a new trial, his complaint of which and the judgment of conviction, led to the granting to him and his prosecution of the present appeal.

The grounds relied on by the appellant for the reversal of the judgment are that he was prejudiced in his substantial rights, because of error committed by the trial court: (1) In instructing the jury. (2) In failing to peremptorily instruct the jury to return a verdict finding him "not guilty."

Stripped of unnecessary details, the evidence introduced on the appellant's trial in behalf of the Commonwealth was substantially as follows: The victim of the homicide, Virgil Reynolds, a boy sixteen years of age, son of John Reynolds, was shot and killed by the appellant, a young unmarried man twenty-three years of age, about 2:30 p. m. November 17, 1923, in a barn near the residence and upon the premises of the boy's father. At that time the family of John Reynolds consisted of himself, his wife, Martha, the stepmother of his children, Dovey, an unmarried daughter eighteen years of age and the son, Virgil. The appellant was living with his parents, whose home was about a mile from that of John Reynolds. On the morning of the homicide the appellant left his father's home carrying with him a single barrel

shot gun and went to High Cliff, a village a half mile away, and about the same distance from the Reynolds home. After remaining a short time at High Cliff he left there to go to the residence of Reynolds, taking with him a pint bottle of moonshine whiskey he had obtained at High Cliff and from which, while at the latter place or on the way to Reynolds', he drank some of the whiskey. He arrived at the Reynolds home at 10:30 a. m. and there met Reynolds, his wife and two children, all of whom were in the house. Upon entering the house appellant left his shot gun upon the front porch. John Reynolds, his wife and daughter each testified that he then appeared to be considerably under the influence of intoxicating liquor, and that after getting into the house he pulled a half-filled pint bottle of whiskey from his pocket and offered each member of the family a drink of its contents, which was declined by all of them except John Reynolds, who put the bottle to his mouth and pretended to drink of its contents for the purpose, as he testified, of keeping the appellant in a good humor. About noon the Reynolds family served dinner, to which appellant was invited, but he declined the invitation, saying he had previously taken dinner. The record contains no evidence of the existence, prior to the day of the homicide, of any bad feeling between the appellant and Virgil Reynolds, but there was evidence that the former had previously made occasional visits to the Reynolds family and seemed to be on friendly terms with Virgil. It is, however, apparent from the evidence that Dovey Reynolds, the daughter of John Reynolds, was the object of attraction to him at the Reynolds home; and equally apparent therefrom that his attentions were not looked upon with favor by her, or regarded with complacency by the father.

The attitude of the daughter toward the appellant is shown, both by her testimony and his, to the effect that only a few days before the occurrence of the homicide she, upon being requested by the appellant to be permitted to accompany her to church on the following Sunday, viz., the Sunday succeeding the day of the homicide, manifested her disinclination to grant the request by responding that she would later give him an answer. This response was unattended by any statement from her of a reason for delaying the answer, or that fixed a time for giving it. Indeed, she never gave an answer to the request, although it was repeated by the appellant on the day of the homicide and before its occurrence.

The unwillingness of the father to have the appellant at his home, whether it arose out of his opposition to the latter's attentions to his daughter, or from his partly intoxicated condition, was manifested by his attempt made, as he testified, shortly after dinner to get him to leave it by inviting him to accompany him to a store near at hand, where he went to purchase some family supplies. The attempt was thwarted, however, by the appellant's refusal of the invitation, whereupon Reynolds went to the store alone and upon returning to his residence found the appellant still there in the front room with Mrs. Reynolds and the son and daughter.

Reynolds then learned from his wife and children and also from appellant that his son Virgil and the appellant had been amusing themselves in his absence by playing "pranks" upon each other, during which Virgil had rubbed red pepper on the mouth or lips of the appellant that proved to be painful; and that in an effort to relieve this pain Mrs. Reynolds or the daughter, Dovey, had applied lard to his lips. According to the testimony of the witness the appellant then seemed to be in an ill humor and said to him in telling of Virgil's rubbing the pepper on his lips: "That is dangerous; I have got nervous trouble and it is liable to kill me. There is lots of men, if you would do that to them, they would kill you; I am as nervy a man as ever saw this county."

Mrs. Reynolds and Dovey Reynolds observed that the appellant had been drinking and saw the pranks played by him and Virgil upon each other that ended with the rubbing of the pepper by Virgil on the mouth of the appellant, which, as they testified, appeared to put the latter in a bad temper and caused him to spit on Virgil's foot and kick at him.

John Reynolds after his return from the store he had visited remained a short time at home and then went to another store, also near his residence, to purchase some apples, which he failed to find at the store first visited. He had his son Virgil to go to this store with him in the hope that his absence from home would induce the departure therefrom of the appellant; but on their return home, after a brief stay at the store, they found the appellant still in the house; and that in their absence another visitor, Ola Lovitt, had arrived. When they entered the house the appellant and Lovitt were discussing hunting and upon Lovitt's expressing a wish to see the appellant's gun, the latter went out to the porch and got the gun, carried it into the room occupied by the company present

and sat down with it in his lap, at which time it was pointed towards John Reynolds or, as testified by the latter, "presented at him." Upon Lovitt's attempting to take the gun in his hand, the appellant removed the load it contained and handed it to him. After inspecting the gun Lovitt returned it to appellant, who then accepted a proposition from Virgil Reynolds that they go hunting. This proposition from Virgil, as testified by John Reynolds, resulted from a suggestion privately made by him to Virgil in the house that it be resorted to as a means of getting the appellant to leave the house and premises. Following acceptance of Virgil's proposition by the appellant, they, each carrying his gun, went with Lovitt out of the house to the front porch, where the appellant began a conversation with Lovitt as to the qualities of the latter's horse then standing hitched in front of the house, and which the owner, at the appellant's solicitation, soon mounted and rode up the public highway to prove his gaits. After going a short distance Lovitt turned the animal and started back toward the house, seeing which the appellant called to him to ride further and insisted that he do so. Thereupon Lovitt proceeded on in the direction upon which he started and rode a considerable distance before turning back toward the house. Immediately following this command or request from the appellant the latter and Virgil Reynolds went to and entered the Reynolds barn, in the hallway of which was fired the shot that instantly killed Virgil Reynolds.

The barn is not more than forty yards from the dwelling house and the sound of the shot by which the deceased was killed was distinctly heard by his father, mother and sister; also by Lovitt and one or two other persons residing in the immediate vicinity. Upon hearing it, John Reynolds, his wife and daughter immediately ran out of the house into the front yard and saw the appellant who was backing out of the hallway of the barn with his gun in his hands, peering through the smoke that filled the hallway as if at some object therein. Upon being called by John Reynolds and asked what had happened, the appellant gave no response, and made his escape by flight. He was also seen immediately after the shooting backing away from the barn, or in flight, by Mrs. Reynolds, Dovey Reynolds and Ola Lovitt, the latter after hearing the shot having quickly rushed his horse back to Reynolds' house.

Mrs. Reynolds was the first person to reach the barn, and was soon followed by Dovey Reynolds. They found Virgil's dead body in the hallway and his gun completely loaded lying on the ground near the body. It was testified by the physician called to examine the body that the shot or balls from the gun by which he was killed entered his body about two inches below the left nipple and penetrated the heart causing instant death, and that his apparel at the place of the wound was badly powder burned, showing that the muzzle of the gun was against, or in close proximity to his body when fired.

The appellant in giving his testimony admitted the killing of the deceased, but claimed that it was caused by the accidental discharge of his gun, the lock of which caught in his coat or struck some part of the barn after he and the deceased got into the building. He also admitted his possession of the bottle of whiskey seen by the Reynolds family when he produced it from his pocket while in the house and that he and the deceased at his suggestion entered the barn for the purpose of taking a drink of whiskey from this bottle before starting on their hunting expedition.

The appellant likewise admitted his failure after the shooting of the deceased to heed the demands of the latter's father to know what had happened; and his flight without going to where the body of deceased had fallen to see his condition, or offer him assistance, but claimed that all of this conduct resulted from the threats of the father to kill him and his demand that his gun be brought to him from the house that he might shoot the appellant. The appellant denied that he had been angered by the act of the deceased in rubbing the pepper on his mouth, or that he had expressed such anger to his father as stated by the latter; and testified that during his entire acquaintance with the Reynolds family his relations with them and the deceased had at all times been friendly.

There was an attempt to show by evidence in the appellant's behalf that the testimony given by John Reynolds, his wife and daughter on the trial in the circuit court differed in some respects from that given by them on his examining trial, but we do not find the variances material. The facts to which they testified on both trials, though in some instances stated in different language, were substantially the same.

Passing first on the appellant's contention that the verdict is unsupported by the evidence, we are constrained to declare that our consideration of it has led us to the opposite conclusion. In view of the testimony of Martha and Dovey Reynolds that the appellant was angered by Virgil's rubbing of his lips with the pepper and manifested it by spitting on the latter's foot, kicking at him and subsequently maintaining a sullen demeanor toward him; the testimony of John Reynolds that appellant was in an ill humor and complained to him in resentful language of the son's act; that of Ola Lovitt as to the appellant's inducing him to ride his horse such a distance up the highway as removed from his view the place of and parties to the homicide at the time of its occurrence; and the further testimony of the several witnesses named, corroborated by the appellant's admission, showing his flight from the scene of the homicide immediately after its occurrence, it cannot successfully be maintained that the verdict of the jury is unsupported by or flagrantly against the evidence.

It is manifest that the evidence referred to conduced to prove that the shooting of the deceased by the appellant was intentional, and equally manifest from the latter's admission to that effect that it was not done in defense of his life or person. Consequently the act was either intentional and, therefore, wilful and unlawful, or accidental as claimed by him in testifying in his own behalf. So the case was one of conflicting evidence from which it was the duty of the jury to determine the guilt or innocence of the accused, and this duty it seems to have impartially performed without affording the trial court, or the appellate court, any legal cause apparent of record for disturbing the verdict on the ground above indicated.

Whether the evidence of the Commonwealth more strongly tended to prove that the killing in question was done by the appellant with the malice aforethought that constitutes the crime of murder, rather than in the sudden heat and passion constituting the lesser crime of voluntary manslaughter, of which the verdict found him guilty, we need not consider, as he was not thereby prejudiced in any of his substantial rights; as there was evidence that his anger had been provoked by the deceased, he will not be heard to complain that he was found guilty, as permitted by the trial court's instruc-

tions, of a lower degree of the crime for which he was indicted and tried.

The record fails to disclose any reason for sustaining the appellant's complaint of error in the instructions. We have repeatedly held that where in a case of homicide the only defense interposed is that the killing was accidental, and the accused himself so testifies, an instruction on the law of self-defense should not be given. It is only necessary that the jury should be instructed upon the law of murder, voluntary manslaughter, involuntary manslaughter, accidental killing; and also on the subjects of reasonable doubt and presumption of innocence. Cornett v. Commonwealth, 156 Ky. 795; Brown v. Commonwealth, 122 Ky. 626; Ewing v. Commonwealth, 129 Ky. 237; Hunn v. Commonwealth, 143 Ky. 143; McGeorge v. Commonwealth, 145 Ky. 540.

By the instructions given in the case at bar the jury were told, in substantially correct language, that if the appellant wilfully, feloniously and with malice aforethought, shot and killed Virgil Reynolds he was guilty of murder. If he shot and killed him without previous malice but in sudden heat or passion, or by the reckless or grossly careless handling or discharge of the gun when he knew it was dangeroue to life if used in the way he used it, he was guilty of voluntary manslaughter. If he was not reckless or grossly careless in handling the gun but intentionally pointed it at the deceased, and in thus doing permitted it to be discharged, although believing it would not go off, nor intending to shoot him and not having reason to apprehend that it would go off, he was guilty of involuntary manslaughter. On the other hand the jury were told that if the shot that killed the deceased was accidental and unintentional on the part of the appellant, and not wilful and with malice aforethought as defined in the instruction as to murder, or the result of sudden heat and passion, or recklessness and carelessness as defined in the instruction on voluntary manslaughter, or of his intentional pointing the gun at him as defined in the instruction on involuntary manslaughter, they should acquit him. In addition to the instructions mentioned there was another further telling the jury that if they believed from the evidence beyond a reasonable doubt that the appellant was guilty of one of the several offenses defined in the instructions, but should have a reasonable doubt as to the degree of the offense, it was their duty to find him

guilty of the lesser offense, or if they believed from the evidence that the killing of the deceased was accidental, or if they had a reasonable doubt of his having been proven guilty, they should acquit him.

We find no merit in the appellant's contention that the failure of the verdict to declare in words the appellant guilty of voluntary manslaughter rendered it so indefinite as to make it invalid. A like objection was made to the form of a similar verdict in Hunn v. Commonwealth, *supra*, in overruling which we, in the opinion, said:

"We must also overrule appellant's objection to the form of the verdict. That it did not in words declare appellant guilty of voluntary manslaughter does not affect its validity. Its meaning is patent; the fact that the jury were authorized by the instructions and proof to find appellant guilty of voluntary manslaughter and that the punishment it prescribed is such as could be inflicted only for that crime, leaves no doubt of its being a verdict for voluntary manslaughter. The verdict might properly have been corrected by the trial court before the discharge of the jury, but the correction was not necessary to its validity. The failure of the verdict to name the offense for which the jury finds the defendant guilty, does not make it invalid, if from its language as a whole no doubt can arise as to the offense of which it finds him guilty it will be held sufficient. Hays v. Commonwealth, 12 R. 611; Lucas v. Commonwealth, 142 Ky. 416."

Being convinced that the record is free of reversible error the judgment is affirmed.