Lucille DISHEROON, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.

No. A–12823.

Court of Criminal Appeals of Oklahoma.

Oct. 26, 1960.

Rehearing Denied Nov. 2, 1960.

Second Petition for Rehearing Denied Nov. 23, 1960.

238

W. L. Steger, Durant, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., Wallace Gates, County Atty., Bryan County, Durant, for defendant in error.

POWELL, Presiding Judge.

Lucille Disheroon, plaintiff in error, hereinafter referred to as defendant, was charged by indictment filed in the district court of Bryan County with the crime of murder; the case was tried to a jury resulting in a conviction of the included offense of manslaughter in the first degree, with punishment fixed by the jury at four years in the State Penitentiary. Appeal has been duly perfected to this Court.

The indictment in substance charged that on December 7, 1958 Lucille Disheroon made an assault upon George Shivers with a .22 revolver and did shoot and discharge said firearm into and upon the body of George Shivers, and thereby caused his death.

Defendant admitted the shooting, but claimed that she shot the deceased to protect herself from being assaulted by him.

The evidence is conflicting as to the facts of the shooting.

The testimony developed that defendant was a widow. She had two sons, one boy 17 years of age who testified at the trial,

and also a younger son who was present at the trial. Her husband was deceased, and for around three years prior to the killing defendant and the deceased had been quite friendly. George Shivers, when under the influence of intoxicating liquor, had beaten the defendant a number of times.

The evidence was that after defendant had killed her friend, she lifted his head and kissed him. Prior to the shooting she and deceased had whispered to each other while sitting on adjoining counter stools in a tavern, and they apparently fell off the counter stools and wrestled on the floor for a short time. The deceased was shown to have been violent and turbulent at times, and at one time kicked a former district judge so that the judge had to be operated on for a rupture. And defendant herself was shown to have been in fights, and frequented beer joints. Her conduct had been anything but exemplary.

 No: question has been raised as to the sufficiency of the evidence to support the verdict and judgment; and it will be unnecessary to summarize the evidence of the many witnesses for both the State and the defendant as to the facts of the shooting alleged. We have carefully read the record and find that the evidence, though conflicting in part, was sufficient to support the verdict and judgment. We have said in many cases in substance that in the trial of a criminal case, questions of fact involving the guilt or innocence of the accused are always for the jury, and when, on appeal, the record discloses facts which would have been sufficient either to warrant a verdict of acquittal or to support a verdict of guilty, the finding of the jury will not be disturbed. In such cases, only errors of law will be reviewed. See Hayes v. State, Okl.Cr., 292 P.2d 442; Ellis v. State, Okl.Cr., 318 P.2d 629; Stiner v. State, 95 Okl.Cr. 381, 246 P.2d 419; Spears v. State, 89 Okl.Cr. 361, 207 P.2d 946.

To be considered, then, are the two propositions of law advanced by counsel and said to be grounds for reversal of the case.

It is first contended that prejudicial error was committed because the county attorney made certain alleged improper remarks in his closing argument to the jury, quoted from the record, as follows:

"She has a family, two boys, I believe it is, and Oh how she is leading them. I wish I could tell you, just wish I could tell you.

"Mr. Steger: We object to that line of argument, your Honor.

"The Court: Overruled. Exceptions allowed."

Then again:

"* * * now look over here at Lucille, you see her, you don't have to guess at her weight and according to all the evidence, she's a tigress.

"Mr. Gossett: We object, there's no such evidence here. It's highly prejudicial.

"The Court: Overruled. Exceptions allowed. I think this jury can recall the evidence and weigh it."

■ As pointed out by the Attorney General, in Hathcox v. State, 94 Okl.Cr. 110, 230 P.2d 927, 929, in paragraphs 7, 8 and 9 of the syllabus, this Court said:

"Counsel for a defendant must not only object to alleged improper statements of the county attorney in his argument to the jury, but he must go further and move the court to exclude such remarks from the jury and instruct them not to consider them for any purpose, unless the remarks were of such a character that the error would not be cured by a withdrawal of the remarks.

"Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.

"The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the state and the defendant have a right to discuss fully from their standpoint the evidence and the inferences and deductions arising from it. It is only when argument by counsel for the state is grossly improper and unwarranted upon some point which may have affected defendant's rights that a reversal can be based on improper argument."

■ The record discloses that counsel only objected to the remarks complained about, without requesting the court to admonish the jury not to consider them. No motion was made to exclude the objectionable remarks from the consideration of the jury. This should have been done. A court under the heat and pressure of a trial should be given every opportunity for deliberation if counsel is really serious about the objections he may make.

. But as we see from the Hathcox case, supra, and the cases cited, a county attorney has the right to fully discuss from his standpoint the evidence and inferences and deductions flowing from such evidence. To constitute grounds for reversal, his argument must have been grossly improper to the extent that it could have been prejudicial to the rights of the defendant.

■ Concededly, remarks made by a prosecuting attorney which are not based upon, or which may not be fairly inferred from the record, are improper. He must not misrepresent the evidence nor diverge in a brazen manner from the facts of the case. See State v. Sullivan, 24 N.J. 18, 130 A.2d 610, 66 A.L.R.2d 761, cited by defendant.

But the record is replete with incidents and conduct on the part of the defendant that certainly could not be pointed to with pride or held as an example for her sons to follow. The boys were present in court, and one had testified. Based on the record as a whole, we are unable to say that the county attorney did not have basis in the facts to justify the remarks made.

Title 22 O.S.1951 § 1068 reads:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

Under proposition two it is next contended that the verdict rendered is too indefinite and uncertain on which to base the judgment of conviction.

The verdict reads as follows:

"We, the Jury duly empanelled and sworn in the above entitled case, do, upon our oaths, find from the law and the evidence, the above-named defendant, *guilty and assess her punishment at 4 years in the State Penitentiary.*

"Dated this 17 day of March, 1959.
"/s/ W. M. Bourne, Foreman."

■ The record discloses that the verdict was returned into open court by the jury and was read by the court clerk in the presence of the defendant. The court first polled the jury, and each member of the jury answered the statement of the court: "This is your verdict and it is a unanimous verdict?" with the affirmative, "Yes, sir", or "Yes".

The court then set the time for sentencing, made a number of announcements, and thereafter stated that he was excusing the jury until 9:00 o'clock the next morning, when they should report for another case.

The court then dictated into the record the following statement:

"Let the record show that the verdict was returned in open court and

that at the time the verdict was handed to the court, the court advised the foreman of the jury that the verdict was not dated and instructed the foreman of the jury to write the word '17', being the date in March on which said verdict was rendered in open court, and in the presence of open court, the defendant being present and the jury in the jury box with the exception of the foreman, the foreman of the jury on the Judge's bench put with pen and ink the '17', being the date of March, 1959, on which said verdict was rendered in said cause, to which the defendant excepts and exceptions are allowed.

"Mr. Steger: Defendant further objects to the form of the verdict.

"The Court: Exceptions allowed."

From the above record it is not clear whether the jury was still in the box at the time the court dictated the statement and counsel for defendant interjected: "Defendant further objects to the form of the verdict". It was and is our conclusion from the record that the statement dictated by the court was after the jury was discharged and was merely a history of what had just taken place prior to the jury's discharge. But be that as it may, the objection appears to have been a perfunctory one. Exactly what council thought was wrong with the verdict was not pointed out to the court so that if the court found it valid he could have had correction made, in case the jury at the time had not been discharged from further consideration of the case.

It is evident that the court thought the verdict irregular because not dated, and he had that correction made, but it is also evident that he did not notice any other irregularity and there is nothing in the record to show that the complaint now made was specifically called to his attention.

We further note that on April 3, 1959 judgment and sentence was entered finding the defendant, Lucille Disheroon, guilty of manslaughter in the first degree. The court, in accordance with the jury's verdict, fixed the defendant's punishment at four years confinement in the State Penitentiary at McAlester, sentence to begin upon delivery of defendant to the Warden of the Penitentiary.

Defendant argues that the verdict was too indefinite and uncertain upon which to base the judgment of conviction for manslaughter in the first degree. And it will be noted from the verdict quoted that the jury did not specifically state that the conviction was for manslaughter in the first degree, though the punishment assessed fitted the minimum for that included offense. 21 O.S. 1951 § 715. The crime charged, as we have seen, was murder. The punishment for conviction of murder is either death or imprisonment at hard labor in the State Penitentiary for life, at the discretion of the jury, 21 O.S.1951 § 707.

The court's instructions fully covered the law relating to the crime of murder, as well as the law relating to the included offense of manslaughter in the first degree. Second degree manslaughter was not included in the instructions.

The court instructed the jury that in the event they found the defendant guilty of murder, they should assess her punishment at death or by imprisonment in the State Penitentiary for life. The jury was also instructed that if it failed to find the defendant guilty of murder, then it would be their duty to determine whether the defendant was guilty of manslaughter in the first degree. The court told the jury that if it found the defendant guilty of manslaughter in the first degree, they should assess the punishment at imprisonment in the State Penitentiary for any period of time not less than four years.

We further note that the court also instructed the jury that if it believed from the evidence "that the defendant acted in her own necessary self-defense, or should you entertain a reasonable doubt thereof, you should give the defendant the benefit of such doubt and acquit her."

In Dunbar v. State, 75 Okl.Cr. 275, 131 P.2d 116, 123, in the body of the opinion the Court stated the rule governing situa-

tions as in this case with respect to irregular verdicts to be:

"This Court has repeatedly said in numerous decisions that a verdict will not be held void for uncertainty if its meaning can be determined by reference to the record proper."

In the Oklahoma cases coming to our attention, the record is either silent or if complete shows that counsel failed in the respective cases to object to the form of the verdict at the time the verdict was read to the jury. Here the record, as stated, would indicate that the jury had been dismissed when the objection was made. But we must hold that the objection was, if timely made, not specific enough; that the court showed no conscious indication that he even understood the objection.

But above this, by referring back to the early case of Bowlegs v. State, 9 Okl.Cr. 69, 130 P. 824, in an opinion by Doyle, J., concurred in by Armstrong, P. J., and Furman, J., the leading case sustaining the doctrine quoted above was a Kentucky case of Hays v. Commonwealth, 1890, 14 S.W. 833, 834, 12 Ky.Law Rep. 611. No consideration was given to possible objections to the form of the verdict. In the Hays case the indictment was for murder, and the verdict was:

"We, the * * * jury, find the defendant guilty, and fix his punishment at five years in the penitentiary."

Judge Doyle quotes from the Hays opinion as follows:

"The 257th section of the Criminal Code provides that a general verdict upon a plea of not guilty shall be guilty or not guilty; 'and, if guilty, fixing the offense and the degree of the offense, and the punishment in cases in which the jury is required to fix the degree of punishment.' Certainty is highly important to a proper administration of the criminal law; but it should not go so far as to sacrifice substance to form. Under our law, one indicted for murder may be convicted of manslaughter. The jury were told, if they found the accused guilty of murder, they must fix his punishment at death or confinement in the penitentiary for life, but, if guilty of manslaughter, at not less than two, nor more than twenty years' confinement in the penitentiary. It is therefore absolutely certain from the verdict that the jury intended to and did find the accused guilty of manslaughter. While properly the verdict should have said so, yet it substantially does, by the punishment awarded. Judgment affirmed."

In addition to other cases cited by Judge Doyle, we note the following later Kentucky cases upholding the principle in question: Gillum v. Commonwealth, Ky.1909, 121 S. W. 445; Maiden v. Commonwealth, 1924, 203 Ky. 446, 262 S.W. 588; and Clark v. Commonwealth, 1925, 209 Ky. 51, 272 S.W. 11.

In Nelson v. State, 34 Okl.Cr. 187, 245 P. 1009, although the case was reversed on other grounds, this Court upheld the principle of law treated in the Bowlegs case, supra, and in paragraph 2 of the syllabus said:

"Where, from an examination of the verdict and the entire record, the intent and purpose of the jury as expressed in their verdict may be clearly ascertained, it will be upheld."

Expanding, in the body of the opinion in the Nelson case, it is said:

"It is the well-settled doctrine that, where the jury is required by statute to fix the degree of the crime of which the defendant is guilty, a verdict which does not expressly state the degree is sufficiently definite and certain as to the degree of which the defendant was convicted, if the assessment of punishment clearly indicates such degree."

In the within case counsel for defendant did not request any special instructions, and no exceptions or objections were made to any of the instructions given to the jury. And we conclude from an examination of the verdict, and the entire record, that it was clearly the intent and purpose of the

jury to find the defendant guilty of manslaughter in the first degree, and to fix her punishment at four years in the State Penitentiary, the lowest sentence the jury could have given under the instructions of the court.

The verdict and judgment complained of under facts stated must be, and is, affirmed

NIX and BRETT, JJ., concur.