# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 17 2016, 6:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Yvette M. LaPlante
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Myles K. Martin, Jr., *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | March 17, 2016 <br><br> Court of Appeals Case No. 82A01-1507-CR-966 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Robert J. Pigman, Judge <br><br> Trial Court Cause No. 82D02-1404-FB-418 |

**Riley, Judge.**

## STATEMENT OF THE CASE

[1] Appellant-Defendant, Myles K. Martin (Martin), appeals his conviction for carjacking, a Class B felony, Ind. Code § 35-42-5-2(1) (2014); resisting law enforcement, a Class D felony, I.C. § 35-44-3-3(a)(1); resisting law enforcement, a Class A misdemeanor, I.C. § 35-44-3-3(a)(2); and his adjudication as a habitual offender, I.C. § 35-50-2-8.

[2] We affirm.

## ISSUES

[3] Martin raises two issues on appeal, which we restate as follows:

(1)    Whether the trial court abused its discretion when it admitted certain out-of-state documents; and

(2)    Whether the State committed prosecutorial misconduct amounting to fundamental error.

## FACTS AND PROCEDURAL HISTORY

[4] On March 29, 2014, at approximately 8.00 a.m., Pennie Hart (Hart), a hairdresser from Evansville, Indiana, drove her silver Lexus SUV to work. When she parked the vehicle, a man, later identified as Martin, opened her driver's door, pointed an object that appeared to be a handgun at her, and ordered Hart to exit the vehicle. Afraid that she would get shot, Hart complied

with the order. Martin entered the vehicle and drove away. Hart immediately called the police.

[5] Shortly thereafter, police officers spotted the SUV outside a nearby apartment complex. One of the officers approached the SUV, identified himself as a police officer, and commanded Martin to show his hands and exit the vehicle. Martin refused, backed the SUV up into a parked car, and drove away. The officers shot the tires of the vehicle. After a brief chase, Martin abandoned the SUV in a muddy field, leaving his driver's license in the process, and continued to flee on foot. He was apprehended before he was able to cross the field. During their investigation, law enforcement recovered a BB gun, which was consistent with Hart's description of the weapon used by Martin, from the SUV.

[6] On April 1, 2014, the State filed an Information charging Martin with Count I, armed robbery, a Class B felony; Count II, carjacking, a Class B felony; Count III, felon carrying a handgun, a Class C felony; Count IV, resisting law enforcement, a Class D felony; and Count V, resisting law enforcement, a Class A misdemeanor. On April 2, 2014, the State alleged Martin to be a habitual offender. A bifurcated jury trial was commenced on June 8, 2015. During the guilt phase of the trial, the jury found Martin guilty of robbery, carjacking, and two Counts of resisting law enforcement. During the habitual offender phase of the trial, the State alleged that Martin had previously been convicted of two unrelated felonies. Martin's first felony was an unlawful taking of a 1994 Chrysler automobile on or about June 10 or 11, 1996, in Daviess County,

Kentucky. Martin was convicted for theft on January 31, 1997, under Cause No. 96-CR-214. His second felony was a car chase on July 2, 2012, in Daviess County, Kentucky. Martin was convicted for fleeing or evading police in the first degree on January 18, 2013, under Cause No. 12-CR-514.

[7] To establish Martin's conviction in Cause No. 96-CR-214, the State offered certified copies of the indictment, motion to enter guilty plea, the judgment and sentencing order. Each document was stamped with a certification stating "I certify that the foregoing is a full and correct copy as appears in my office, this *4*[th] day of *Feb*[.], 20*15*, Susan W. Tierney, Clerk Daviess Circuit Court, by *J.B.* D.C." (Ex. 1-3); (Appellant's App. pp. 149-156) (handwritten part italicized). The judgment and sentencing order stated Martin's date of birth and his social security number. To prove Martin's conviction in Cause No. 12-CR-514, the State offered certified copies of the indictment, motion to enter guilty plea, and the judgment and sentencing order. Each document was stamped with a certification stating, "I certify that the foregoing is a full and correct copy as appears in my office, this *4*[th] day of *Feb*[.], 20*15*, Susan W. Tierney, Clerk Daviess Circuit Court, by *J.B.* D.C." (Ex. 4-6); (Appellant's App. pp. 163-172) (handwritten part italicized). The judgment and sentencing order stated Martin's date of birth, and the indictment stated his social security number. Martin objected to the admission of Exhibits 1 through 6 claiming that they did not comply with Ind. Evidence Rule 902, but the trial court overruled his objections.

[8] During closing arguments, defense counsel acknowledged that the evidence admitted by the trial court established Martin's convictions for two prior unrelated felonies. Nonetheless, defense counsel urged the jury to decline finding Martin a habitual offender. Defense counsel compared Martin to a hypothetical person alleged to be a habitual smoker:

> If you smoke, if you are a habitual smoker, you probably smoke every day. It's not where you smoke when you're 19 years old, maybe have a cigar when you're 19 years old and then you don't have another one until you are 35. Well guess what? That is kind of what we have here. [Martin] was 19 when that first conviction was entered back in 1997. Nineteen (19) years old. Sixteen (16) years pass and he is convicted in 2013. Does that make one habitually in trouble? Habitually in trouble such as to elevate his sentence before you.

(Transcript p. 156).

[9] In rebuttal, the prosecutor argued:

> [Defense counsel] wants you to be swayed by your emotions, he wants you to um I guess take pity on … Martin because he did one (1) crime once when he was 19 years old and then didn't do anything else, he was a good boy until 2012. Not exactly the case. He says there were no other convictions in between there. He doesn't have any documents to show that there weren't. He committed a crime in [1996], he committed one (1) in 2012 and then again in 2014. He wants you to be swayed by your emotions. The State Legislature has said you commit crimes in our State or anywhere else you are deserving of more punishment. We can't let you run around committing crimes, hurting people, some of those crimes where (sic) the same. His first one was [t]heft, his next one was [t]heft, [f]leeing from the

police and now he has done it again. And to have it is behavior it is what he does. [The] State Legislature has determined that he is a person that needs to be considered [a] Habitual Offender and that is why they make the law the way it is. We only have to prove two (2) convictions, we picked two (2), we've proven to you those beyond a reasonable doubt. Find him guilty of being [a] Habitual Offender.

(Tr. pp. 158-59). Martin did not object to the State's rebuttal comments. At the conclusion of the jury trial on June 9, 2015, the jury found Martin to be a habitual offender. On July 15, 2015, the trial court held a sentencing hearing, declined to enter judgment for robbery due to double jeopardy concerns, and sentenced Martin to an aggregate term of 42 years, which included an enhancement of 30 years due to Martin's habitual offender status, to be executed at the Department of Correction.

[10] Martin now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Authenticity of Documents*

[11] Martin argues that the copies of documents showing his prior convictions in Kentucky were not properly authenticated, and hence the trial court erred in admitting them. The determination of whether evidence has been authenticated is within the discretion of the trial court. *In re B.J.R.*, 984 N.E.2d 687, 694 (Ind. Ct. App. 2013). We will reverse the trial court's ruling only for an abuse of discretion. *Id.* An abuse of discretion occurs when the decision is

clearly erroneous and against the logic and effect of the facts and circumstances before the court. *Id.*

[12] In Indiana, the determination of whether an order of conviction and sentencing from another state is authenticated and may be admitted into evidence is governed by the Rules of Evidence. *Id*. at 694-95; *see* Ind. Trial Rule 44. Under the Rules of Evidence, the requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims. *In re B.J.R.*, 984 N.E.2d at 695; *see* Evid. R. 901(a). Certain documents, however, are self-authenticating and no extrinsic evidence is necessary for their admission. T.R. 902. These documents include certified copies of public records pursuant to T.R. 902(4). A certification, which states that it is the official original record, or a true and accurate copy thereof, by a public officer from the specific jurisdiction where the record is kept is sufficient to authenticate the record, and there is no mandate that the certification take a particular form. *In re B.J.R.*, 984 N.E.2d at 695. The certifying officer's initials are sufficient attestation. *Dumes v. State*, 718 N.E.2d 1171, 1177 (Ind. Ct. App. 1999), *supplemented on reh'g*, 723 N.E.2d 460 (Ind. Ct. App. 2000). Moreover, certification under seal is required only when proof of the record's possession is at issue. *Id.* Finally, there is no requirement of extrinsic proof or judicial certification that the certifying public official is the record's custodian. *Id*.

[13] Here, our review of the record indicates that the trial court was within its discretion in admitting the evidence. Exhibits 1 through 6 were copies of court

documents showing Martin's prior out-of-state convictions and fell within the self-authenticating category of the trial rules and do not require proof by extrinsic evidence. A proper public officer charged to keep these records was the circuit court clerk. *See Mercer v. Com.*, 330 S.W.2d 734, 737 (Ky. Ct. App. 1959). A deputy clerk was authorized to authenticate court records. *See Lucas v. Comm.*, 134 S.W. 456, 457 (Ky. Ct. App. 1911). Further, each Exhibit was stamped with a certification statement that left blank space for a date and a signature. The signature line ended with "D.C.," which we find to stand for Deputy Clerk. (Ex. 1-6); *see, e.g., Stewart v. State*, 688 N.E.2d 1254, 1259 (Ind. 1997) (a record of prior conviction from Kenton County, Kentucky, was certified by a deputy clerk of the circuit court with "Marry Ann Woltenberg, Clerk. By Judy Stall, D.C.," where "D.C." was inferred to be Deputy Clerk). Finally, the deputy clerk dated and initialed each certification statement attesting each copy to be true and correct. Because there is no particular form required for the attestations, we find that these certification statements made by the custodian of the court records in Daviess County, Kentucky, satisfy our rules of evidence. As such, we conclude that the trial court was within its discretion to find Exhibits 1 through 6 properly authenticated.

## II. *Prosecutorial Remarks*

[14] Martin alleges that the prosecutor committed misconduct during her rebuttal argument.

> In reviewing a claim of prosecutorial misconduct properly raised in the trial court, we determine (1) whether misconduct occurred,

and if so, (2) whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he or she would not have been subjected otherwise. A prosecutor has the duty to present a persuasive final argument and thus placing a defendant in grave peril, by itself, is not misconduct. Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. To preserve a claim of prosecutorial misconduct, the defendant must—at the time the alleged misconduct occurs—request an admonishment to the jury, and if further relief is desired, move for a mistrial.

*Ryan v. State,* 9 N.E.3d 663, 667 (Ind. 2014) (internal citations omitted), *reh'g denied*.

[15] Martin neither raised any objection to, nor sought relief from, the prosecutor's remark during trial. Therefore, now, to avoid procedural default, the defendant must establish not only the grounds for prosecutorial misconduct but must also establish that the prosecutorial misconduct constituted fundamental error. *Id.* at 667-68. Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. *Id.* at 668. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial court erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and

(b) present an undeniable and substantial potential for harm. *Id.* The element of such harm is not established by the fact of ultimate conviction but rather depends upon whether the defendant's right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. *Id*.

> In evaluating the issue of fundamental error, our task [then] is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such *an undeniable and substantial effect on the jury's decision* that a fair trial was impossible.

*Id.* (emphasis in original).

[16] Here, pointing to the prosecutor's rebuttal statement that it was "not exactly the case" that Martin had lived a law-abiding life between 1997 and 2012 and that the State had "picked two" prior convictions, Martin maintains that the prosecutor in essence suggested to the jury that Martin did not live a law-abiding life until 2012, improperly used facts not in evidence, and improperly shifted the burden of proof to Martin to show that that he had no convictions between 1997 and 2012. (Appellant's Br. p. 8).

[17] Our review of the record indicates that the prosecutor's remark in response to defense counsel's closing argument, when placed within the context of both arguments, was not an impermissible inference. Defense counsel compared Martin to someone alleged to be a habitual smoker, who smokes every day. He

continued his illustration and suggested that smoking three times in many years does not make one a habitual smoker. Defense counsel then asserted that, likewise, Martin was not "habitually in trouble such as to elevate his sentence before [the jury]" and Martin's "three incidences of criminal activity" in 18 years did not make him a habitual offender. (Tr. pp. 156-57). Martin was not merely stating that the State had not proven additional unrelated felonies; rather, he was suggesting that he had not been involved in any criminal conduct during those years. The prosecutor's response mainly amounted to pointing to the speculative nature of Martin's comparison and resulting conclusion. Under these circumstances, where defense counsel introduced a hypothetical example, compared it to the defendant's situation, made an inference, and then was rebutted with the evidence of his prior convictions, we fail to see the alleged prosecutorial wrong, use of facts outside of the evidence, and shift of the burden of proof.

[18] Furthermore, even if the prosecutor's response had a negative effect on the jury, such effect was *de minimus* because the jury had received proper preliminary and final instructions. *See, e.g.*, *Neville v. State,* 976 N.E.2d 1252, 1263-65 (Ind. Ct. App. 2012) (the defendant was not placed in grave peril by prosecutor's statement because the trial court's preliminary and final jury instructions diminished any persuasive effect the prosecutor's comments might have had on the jury's decision if left unanswered), *trans. denied*; *Stephenson v. State,* 742 N.E.2d 463, 485 (Ind. 2001) ("Having found that any prosecutorial impropriety which may have occurred was *de minimus* or otherwise overcome by the trial

court's admonishments and instructions, we are unable to conclude that Defendant was placed in grave peril."). In its preliminary instructions, the trial court informed the jury that it must base its decision only on the evidence presented during the trial and trial court's instructions on the law. In Court's Preliminary Instruction No. 13, the trial court clearly stated:

> When the evidence is completed, the attorneys may make final arguments. The final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law[,] and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit.

(Appellant's App. p. 55).

[19] During the habitual offender phase of the trial, the State introduced the evidence of Martin's prior felony convictions in Kentucky. In the final instructions, the trial court incorporated all previous instructions and thereby reiterated that the jury must consider only the evidence admitted by the trial court in the jury's presence and disregard all other information from all other sources. Under these circumstances, we find that the jury instructions were sufficient to overcome any potential harm to Martin from the prosecutor's remark. We conclude that the prosecutor's statement made in response to defense counsel's inference of Martin's good character did not undeniably and substantially affect the jury's decision and make a fair trial impossible. Accordingly, no fundamental error occurred.

## CONCLUSION

Based on the foregoing, we hold that the trial court did not abuse its discretion when it admitted properly authenticated records of Martin's prior convictions in Kentucky, and the prosecutor did not commit misconduct amounting to fundamental error.

Affirmed.

Najam, J. and May, J. concur